**Scott DUERR and Kimberly Duerr, Appellants,**

v.

**Ron BROWN, Aaron Dickey, Brown & Crouppen, P.C., George Fleming, Andres Pereira, and Fleming & Associates, L.L.P., Appellees.**

No. 14–07–00619–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 3, 2008.

Georganna L. Simpson, Dallas, TX, for Appellants.

G. Sean Jez, Kenneth R. Breitbeil, Richard G. Wilson, Houston, TX, for Appellees.

Panel consists of Chief Justice HEDGES, and Justice BOYCE and Senior Justice HUDSON.*

## OPINION

WILLIAM J. BOYCE, Justice.

Scott Duerr appeals from orders granting summary judgment on his claims for breach of fiduciary duty against Ron Brown, Aaron Dickey, Brown & Crouppen, P.C., (collectively "Brown"), and George Fleming, Andres Pereira, and Fleming & Associates, L.L.P., (collectively "Fleming"). Duerr also contends the trial court abused its discretion in striking Duerr's legal malpractice expert and denying Duerr's request for a continuance to conduct additional discovery before deciding the case on summary judgment. We affirm.

## Background

Duerr received two Sulzer hip replacement implants in 2000. Duerr underwent additional surgeries after the implants failed. Duerr hired Brown to represent him against Sulzer in connection with the failed hip implants. Brown associated with Fleming to handle the case because Fleming already was engaged in implant litigation against Sulzer.

Duerr had the option to pursue his claim individually or as part of a class. In April 2002, Duerr chose to pursue his claim individually; after Sulzer threatened bankruptcy, however, he changed his mind based upon consultation with Brown and Fleming. Duerr signed a letter revoking his initial opt-out and agreed to rejoin the class settlement. Duerr received $1.6 million as payment for revoking his opt-out and becoming a part of the settlement class; of this amount, $960,000 was paid directly to him after attorney's fees were deducted.

Duerr contends Fleming and Brown promised he would receive additional compensation from his participation in the class settlement as an inducement to rejoin the class. When combined with his existing recovery of $960,000, Duerr says

* Senior Justice J. Harvey Hudson sitting by assignment.

he was promised a total payment of $1.68 million after attorney's fees.

Duerr was eligible for additional settlement benefits pursuant to the Sulzer hip implant class settlement if he could show his injury fell within the purview of the "Affected Product Revision Surgery" (APRS) fund or the "Extraordinary Injury Fund" (EIF). APRS provided benefits to implant recipients who developed major complications from removal or replacement of the defective hip implants. EIF benefits were available to implant recipients who demonstrated permanent injury as a result of the defective hip implants. These benefits were computed under a complex system of matrices, ranging from Matrix I to Matrix V, with each having specific qualification criteria.

Duerr contends that Fleming and Brown incorrectly filed Duerr's requests for additional benefits under the Matrix IV and V benefit schemes, and that his requests were denied as a result. Duerr contends Fleming and Brown did not properly appeal the denial of additional benefits, and that he received no benefits under Matrix IV and V as a result. Duerr also contends he had a valid claim under the EIF Matrix II settlement scheme; that Fleming and Brown failed to pursue his claim, leaving him to file his own Matrix II claim; and that he received only $36,000 in additional benefits as a result. Duerr contends he was damaged because he did not receive all of the additional settlement benefits after attorney's fees that he was promised.

Duerr received another $320,000 after attorney's fees from his APRS claims, leaving him with a total recovery of nearly $1.3 million. This amount still is less than the $1.68 million recovery net of attorney's fees that Duerr says he was promised.

On February 16, 2006, Duerr and his wife sued Fleming and Brown asserting claims for legal malpractice, breach of contract, breach of fiduciary duty, and Deceptive Trade Practices Act violations. On April 21, 2006, the trial court issued a docket control order under which Duerr's expert witnesses would be designated by December 22, 2006; discovery would end on February 22, 2007; and trial would begin on April 23, 2007.

On February 16, 2007, Fleming filed a combined traditional and no-evidence motion for partial summary judgment. Fleming challenged Duerr's claims for breach of contract, breach of fiduciary duty, and DTPA violations. Fleming contended that these claims were an impermissible attempt to fracture a single legal malpractice claim into multiple causes of action, and that Duerr could proffer no evidence to support these claims. Fleming did not seek summary judgment on Duerr's legal malpractice claim.

On February 23, 2007, Brown filed a traditional motion for summary judgment challenging all of Duerr's claims. Like Fleming, Brown contended that Duerr's claims for breach of contract, breach of fiduciary duty, and DTPA violations were an impermissible attempt to fracture a single legal malpractice claim into multiple causes of action. Brown asserted additional grounds for dismissal of the DTPA and breach of contract claims. Brown denied any liability for the legal malpractice claim because Fleming was the principal attorney to whom the case had been referred. Both summary judgment motions were set for hearing on March 23, 2007.

Duerr filed a response to these motions on March 16, 2007. On the day of the summary judgment hearing he filed a motion seeking to continue the hearing and the trial, and to re-open the discovery period.

On March 26, 2007, the trial court (1) denied Duerr's motion for a continuance of

the summary judgment hearing; (2) denied Duerr's motion for a continuance of the trial; (3) granted Fleming's motion for partial summary judgment; (4) granted Brown's motion for summary judgment on all claims asserted by Duerr; and (5) dismissed all claims against Brown. At that point, only the legal malpractice claim against Fleming remained pending.

On March 28, 2007, Fleming filed a no-evidence summary judgment motion targeting Duerr's remaining legal malpractice claim and set the motion for hearing on April 16, 2007. Fleming contended that Duerr was unable to proffer evidence of a breach of duty, causation, or damages. Fleming noted that the discovery cutoff was February 22, 2007. Fleming contended that Duerr unilaterally cancelled the deposition of his only legal malpractice expert set for February 27, 2007; although the deposition initially had been rescheduled by agreement for March 1, 2007, that date too was passed because Duerr's legal malpractice expert wanted more time to consider the summary judgment motions. Duerr offered to have his legal malpractice expert available on dates in late March or early April. Fleming insisted on dates in early March. No agreement was reached.

On April 3, 2007, Fleming filed a motion to strike Duerr's legal malpractice expert, contending that Duerr had not made his expert available for deposition. On April 13, 2007, Duerr filed a motion requesting a continuance of the summary judgment hearing set for April 16, 2007; a response to Fleming's motion to strike his legal malpractice expert; and a response to Fleming's motion for summary judgment subject to the continuance.

On April 20, 2007, the trial court signed an order granting Fleming's motion to strike Duerr's legal malpractice expert;

denying Duerr's motion for a continuance of the summary judgment hearing; and granting Fleming's second summary judgment motion on the remaining legal malpractice claim. Duerr's motion for a continuance of the trial was denied as moot.

With that order, all of Duerr's claims against Fleming and Brown were resolved against Duerr. Duerr field a motion for new trial on May 22, 2007, which was denied on July 3, 2007, and Duerr appealed.[1]

## Standards of Review

### *Summary Judgment*

An appellate court applies *de novo* review to a grant of summary judgment, using the same standard that the trial court used in the first instance. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). A party may move for a traditional summary judgment after the adverse party has appeared or answered, and for a no-evidence summary judgment after an adequate time for discovery has passed. Tex.R. Civ. P. 166a(a), (i); *McMahan v. Greenwood,* 108 S.W.3d 467, 498 (Tex.App.–Houston [14th Dist.] 2003, pet. denied).

A traditional summary judgment may be granted if the motion and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In reviewing a summary judgment we take as true all evidence favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006).

---

**1.** Duerr's wife does not challenge the dismissal of her claims on appeal.

A no-evidence motion for summary judgment must be granted if (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex.R. Civ. P. 166a(i). In reviewing a no-evidence motion for summary judgment, we view all of the summary judgment evidence in the light most favorable to the non-movant, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The non-moving party is not obligated to marshal its proof, but it is required to present evidence that raises a genuine fact issue on the challenged element. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002).

### Sanctions

 We review a trial court's decision imposing sanctions for discovery abuse under an abuse of discretion standard. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006). To establish an abuse of discretion, the complaining party must show that the trial court's actions were arbitrary or unreasonable in light of all the circumstances. *Id.* at 583.

### Continuance

 A trial court's order denying a continuance of a summary judgment hearing will not be disturbed except for a clear abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex.2004). Factors to consider when deciding whether a trial court abused its discretion in denying a continuance include the length of time the case has been on file; the materiality and purpose of the discovery sought; and whether the party seeking the continuance exercised due diligence to obtain the requested discovery. *Id.*

### Analysis

The arguments on appeal focus primarily on whether Duerr has stated a claim for breach of fiduciary duty that is distinct from his claim for legal malpractice. Duerr abandoned his breach of contract claim in his response to Brown's and Fleming's motions for summary judgment, conceding that it was an improperly fractured legal malpractice claim. Duerr abandoned his DTPA claim on appeal because he has not challenged the granting of summary judgment on that claim. Duerr challenges on appeal the dismissal of his breach of fiduciary duty claim against Brown and Fleming. Duerr challenges the dismissal of his legal malpractice claim against Fleming based upon the trial court's decision to strike Duerr's only legal malpractice expert. Duerr also challenges the dismissal of his legal malpractice claim against Fleming and Brown based upon the trial court's refusal to grant a continuance of summary judgment hearings and allow additional time for discovery. We address each issue in turn.

### Breach of Fiduciary Duty

Attorneys Fleming and Brown owed a fiduciary duty to their client Duerr. *See Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1965). Duerr's first issue contends that the trial court erred in granting summary judgment on his claim that Fleming and Brown breached their fiduciary duty to him. Fleming's motion was presented as both a traditional motion under Rule 166a(a) and a no-evidence motion under Rule 166a(i). Brown filed only a traditional motion. Duerr's claim for breach of fiduciary duty was resolved as to all defendants in the March 26, 2007 order.

■ Fleming and Brown predicated their traditional motions for summary judgment on the impermissibility of fracturing a single legal malpractice claim into multiple causes of action. *See Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex.App.–Houston [14th Dist.] 2001, pet. denied) (Texas law does not permit a plaintiff to fracture legal malpractice claims). They contend Duerr improperly attempted to split a single claim for legal malpractice based on the alleged mishandling of his request for additional benefits into separate claims for legal malpractice and breach of fiduciary duty. "Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex.App.–Dallas 2007, pet. denied); *see also Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.–Houston [14th Dist.] 1998, pet. denied) (the appellate court is tasked with determining the precise nature of the claims before deciding whether the trial court's grant of summary judgment to the defendant was appropriate).[2]

■ The prohibition against fracturing a legal malpractice claim does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty claim. "[W]hen cases say that clients cannot divide or fracture their negligence claims against their attorneys into other claims, this does not mean that clients can sue their attorneys only for negligence." *Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189 (Tex.App.–Houston [14th Dist.] 2002, no pet.). But the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. The plaintiff must present a claim that goes beyond what traditionally has been characterized as legal malpractice. *See Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex.App.–Fort Worth 2002, pet. denied) ("Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice").

■ In *Deutsch*, this court discussed the analysis for determining when a single legal malpractice claim has been fractured improperly into multiple causes of action.

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence.

*Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex.2001) (a judicial admission may also be made in a response to a motion or counter-motion). The judicial admission, however, must be clear and unequivocal. *See Holy Cross Church of God in Christ*, 44 S.W.3d at 568. We do not believe this statement is so unequivocal as to constitute a judicial admission.

---

**2.** In Duerr's response to an individual defendant's special appearance, Duerr stated: "Plaintiffs bring this cause of action basically as one of legal malpractice...." Brown contends this statement is a judicial admission that confines Duerr to bringing only a malpractice claim. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex.2000) (a judicial admission may be made in live pleadings); *Holy Cross Church of God in*

97 S.W.3d at 189 (citations omitted). A legal malpractice claim focuses on whether an attorney represented a client with the requisite level of skill, while a breach of fiduciary duty claim encompasses whether an attorney obtained an improper benefit from the representation. *See Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex.App.–San Antonio 2003, pet. denied). Breach of fiduciary duty involves conduct including failure to disclose conflicts of interest; a failure to deliver funds belonging to the client; placing personal interests ahead of a client's interests; misuse of client confidences; taking advantage of the client's trust; engaging in self-dealing; and making material misrepresentations. *See Goffney*, 56 S.W.3d at 193.

█ In determining whether Duerr asserted a breach of fiduciary claim that is distinct from his legal malpractice claim, we examine the petition; Duerr's response to the defendants' motions for summary judgment; and Duerr's deposition. Duerr alleges as follows in his First Amended Petition:

> Plaintiffs restate and incorporate herein the factual background and allegations above and would show unto the Court the following:

> At all times mentioned herein an attorney/client relationship existed between Defendants and Plaintiff which required Defendants to exercise the highest degree of care and loyalty to their client and to place the client's interest above that of their own firms. This duty was breached and the breach of that duty proximately caused damages to Plaintiff in the amount within the jurisdictional limits of this Court.

From Duerr's petition, therefore, it is not clear what conduct he targets as a breach of a fiduciary duty.

Brown and Fleming contend that Duerr's breach of fiduciary duty claim is merely a fractured legal malpractice claim because Duerr's petition sets forth no facts under the label "Second Cause of Action: Breach of Fiduciary Duty." *See Greathouse*, 982 S.W.2d at 172 (plaintiff determined to have impermissibly fractured a legal malpractice claim after simply listing a number of identical paragraphs under different headings, including negligence, breach of fiduciary duty, and breach of duty of good faith and fair dealing, without separate and specific allegations of wrongdoing); *see also O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex.App.–Dallas 2007, pet. granted) (merely asserting attorney did not "exercise the highest degree of care, good faith, and honest dealing" is insufficient to make an independent claim for breach of fiduciary duty without presenting some additional evidence); *cf. Deutsch*, 97 S.W.3d at 190 (a party may allege the same facts under legal malpractice and under breach of fiduciary duty; Texas Rule of Civil Procedure 48 allows a party to plead in the alternative).

Duerr predicates his legal malpractice claim on allegations that Fleming and Brown mishandled the filing of Duerr's requests for additional benefits under the settlement matrices and mishandled the appeal of the benefit decision. In this appeal, Duerr predicates his breach of fiduciary claim on three theories: (1) Brown and Fleming induced Duerr to rejoin the class settlement by promising him a recovery of $1.68 million net of attorney's fees, but Duerr's recovery was less; (2) Brown and Fleming had a "conflict of interest" because they used the settlement of Duerr's valuable claim as leverage to obtain a larger settlement for four other plaintiffs and larger fees for themselves; and (3) Brown and Fleming did not dis-

close the "conflict of interest" to Duerr.[3]

Duerr's first theory is that Brown and Fleming breached their fiduciary duty to him because they promised him a larger recovery net of attorney's fees than he ultimately received. Duerr alleges that the proper information was not filed under the matrices governing additional compensation; items were filed incorrectly; improper information was filed; and an administrative appeal from the denial of benefits was not pursued timely or to its fullest extent. Duerr alleged that Brown and Fleming had opportunities to correct these asserted errors, and "may have mitigated the negligence of all Defendants" had they done so.

These are allegations that Duerr's "attorney[s] did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess." *See Deutsch,* 97 S.W.3d at 189; *see also Murphy,* 241 S.W.3d at 692–93 (giving erroneous legal opinion or advice, delaying or failing to handle a matter, or not using ordinary care in preparing, managing, and prosecuting a case constitutes legal malpractice); *Goffney,* 56 S.W.3d at 193 (allegations attorney abandoned client at trial, did not properly prepare lawsuit for trial, and misled client into believing attorney was prepared for trial were claims for legal malpractice). Because Duerr's first theory focuses on the quality of representation provided, it alleges legal malpractice and nothing more. *See Greathouse,* 982 S.W.2d at 172 (when the crux of complaint is failure to provide adequate legal representation, the claim asserts legal malpractice).

Duerr's second theory is that Brown and Fleming had a conflict of interest arising from the settlement of Duerr's claim together with claims by four other hip implant recipients who were less severely injured. Duerr contends that his more valuable claim was used as leverage to increase the amount paid to the other four claimants. In Duerr's summary judgment response, he asserts that his lawyers wanted to "force Plaintiff to rejoin the class for $1.6 million so that the four less injured clients would be paid a total of $900,000 [out] of which Fleming and Associates would receive a large fee." Duerr points to a letter from Sulzer's attorney to Fleming memorializing a confidential agreement under which Sulzer agreed to pay $2.5 million to five Sulzer claimants represented by Fleming (Duerr and four others) in exchange for each claimant signing a revocation of "prior written opt-outs" and agreeing to participate in the class settlement. The letter indicated that Duerr would receive $1.6 million; litigant Cassone would receive $100,000, litigant Martin would receive $250,000, litigant Heathington would receive $300,000, and litigant Retherford would receive $250,000.

Because Duerr's petition makes only a perfunctory reference to breach of fiduciary duty, Duerr's deposition testimony necessarily assumes an important role in answering the legal question of whether the "conflict of interest" theory describes a breach of fiduciary duty claim distinct from any alleged legal malpractice. Duerr's deposition identifies the reason he is suing, which in turn helps to focus the analysis of whether Duerr asserts a freestanding breach of fiduciary duty claim or

3. Plaintiff's First Amended Petition makes no reference to an asserted conflict of interest, a failure to disclose the asserted conflict of interest, or to the settlement of claims by other hip implant recipients. Duerr's summary judgment response and appellate briefs contain passing references to the asserted conflict, the failure to disclose, and the other claimants.

instead simply affixes a different label to his legal malpractice claim.

Duerr testified as follows:

Q. Now, I believe that the crux of the lawsuit is that you are upset because you believe that you were promised that you would receive in your pocket $1,680,000; is that correct?

A. Yes.

\* \* \*

Q. So with regard to your lawsuit or your claims against Sulzer because of the hips that were defective, you pocketed approximately $1.3 million; is that right?

A. That sounds about right, yes.

Q. So that leaves a net difference of approximately $300,000 that you believe—

A. 380—

Q. $380,000 that you believe was promised to you?

A. Yes

Q. And that's why you filed this lawsuit?

A. Yes.

When he was asked to discuss fiduciary duty specifically, Duerr testified that "I think [Fleming and Brown] ... took me and used me as a trump card and used my case as leverage to better all the other cases that they had; therefore, making more money for them and then throwing me to the wayside." Duerr also testified as follows:

Q. What facts do you have to support your allegation, Mr. Duerr, that you believe Fleming & Associates or Brown & Crouppen used your case to better all their other cases?

A. Pretty much common sense.

Q. You're basing that opinion on common sense, your common sense?

A. I have no answer.

Q. So you don't know why you've made that allegation?

A. Because of conversations with [an attorney from Brown & Crouppen] ... that brought me to that.

Q. What conversations?

A. That I was one of the worst cases that they had and that Fleming had and that with me now with them they would be able to pursue more and harder.

Immediately following his statement about having been thrown "to the wayside," Duerr described his belief that Fleming and Brown failed to prosecute a timely and proper administrative appeal within the class settlement structure from the denial of his requests for additional benefits. Elsewhere in his deposition, Duerr testified as follows:

Q. You claim in your petition that the defendants abandon[ed] you; is that correct?

A. Yes.

Q. When do you believe that they abandon[ed] you?

A. Right after they collected their 40 percent off the 1.6 million to opt back in.

In light of this deposition testimony, Duerr's "conflict of interest" theory boils down to a contention that other hip replacement claimants represented by his lawyers obtained greater recoveries than they otherwise would have obtained because of Duerr's participation in the class settlement, and that his lawyers thereby obtained additional fees. But the "crux" of Duerr's lawsuit remains his contention that he got less than the promised $1.68 million recovery net of attorney's fees.

Duerr does not attribute his failure to obtain the promised $1.68 million net recovery to the participation of other hip implant claimants who allegedly received larger recoveries than they otherwise would have received. Duerr does not attribute this failure to his attorneys' receipt of fees in connection with recoveries by these other claimants. Rather, Duerr attributes this failure to being thrown "to the wayside" and "abandon[ed]" by attorneys who allegedly mishandled his requests for additional benefits within the settlement class structure, and then allegedly mishandled an appeal from the denial of those requests. Given his testimony, Duerr's "conflict of interest" theory does not describe a breach of fiduciary duty claim distinct from his legal malpractice allegations. *See Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 507 (Tex.App.–Houston [1st Dist.] 1995, no pet.) (breach of fiduciary duty claim was impermissibly fractured legal malpractice claim because plaintiff failed to demonstrate how alleged breach of fiduciary duty benefitted fiduciary at the expense of the beneficiary).

Duerr tries to bolster his position by stressing that he has requested fee forfeiture, which is a remedy available for breach of fiduciary duty. *See Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex.1999). Duerr's invocation of fee forfeiture does not change the analysis. During his deposition, Duerr testified as follows:

Q. Okay. And why, if they did get you so much money, should they give you back half of the fee you paid them?

A. Because they didn't do what they promised and they cause me hardships to this day.

This testimony confirms that Duerr's breach of fiduciary duty contention (1) centers on the lawyers' alleged failure to "do what they promised" by failing to deliver a $1.68 million net recovery; and (2) does not assert that he suffered this specific monetary consequence because his interests were subordinated to those of his attorneys or other claimants.

This analysis also addresses Duerr's third theory predicated on a failure to disclose the asserted "conflict of interest." Duerr's deposition testimony establishes that breach of fiduciary duty arising from a "conflict of interest" is merely an alternative label for Duerr's underlying legal malpractice complaint about receiving less money than he was promised. The "conflict of interest" contention is not a distinct breach of fiduciary duty claim that stands apart from the asserted legal malpractice. Because the "conflict of interest" is not a distinct claim, the asserted failure to disclose the "conflict of interest" also is not a distinct breach of fiduciary duty claim that stands apart from the alleged legal malpractice.

In sum, Duerr does not state a separate breach of fiduciary duty claim based on the failure to deliver a promised level of recovery because that failure is attributed to mishandling of Duerr's claims within the class settlement structure. That is a malpractice claim as a matter of law. Duerr does not state a separate breach of fiduciary duty claim based on a "conflict of interest" arising from the settlement of multiple claims because Duerr contends his interests were compromised by the failure to deliver a promised level of recovery attributable to his lawyers' inattention to his benefit requests and appeal. That is a malpractice claim as a matter of law. *See Deutsch*, 97 S.W.3d at 188–90 (failure to represent client on appeal is claim for legal malpractice, not breach of fiduciary duty). Duerr does not state a separate breach of fiduciary duty claim based on a failure to disclose the asserted "conflict of

interest" because the "conflict of interest" is not a separate claim, and because Duerr contends his interests were compromised by the failure to deliver a promised level of recovery attributable to his lawyers' inattention. That too is a malpractice claim as a matter of law.

We overrule Duerr's first issue.

### Legal Malpractice

Duerr next claims that the trial court erred in striking his legal malpractice expert and in granting summary judgment in favor of Fleming on Duerr's legal malpractice claim.[4] This claim against Fleming was the only claim remaining after the trial court's March 26, 2007 order. Duerr concedes that in striking his expert, the trial court dealt a fatal blow to his legal malpractice claim.

Duerr filed this lawsuit on February 16, 2006. On April 21, 2006, the trial court issued a docket control order mandating that Duerr designate his experts by December 22, 2006, and stated that failure to timely respond would be governed by Texas Rule of Civil Procedure 193.6. The docket control order set a discovery deadline of February 22, 2007. Trial was set for April 23, 2007. On June 22, 2006, Duerr amended his petition for the first and only time.

In the months that followed, Duerr deposed no witnesses and engaged in no discovery beyond mandated written disclosures under Texas Rule of Civil Procedure 194. Duerr complied with the docket control order by designating attorney Robert Charles Lyon as his testifying expert. His designation was made in this response:

It is expected Mr. Lyon will testify on the issues of the Defendant's failure to comply with the standard of care, that their conduct was negligent, that their conduct was a proximate cause of the damages claimed by the Plaintiffs; and that a fiduciary relationship existed between Plaintiffs and Defendants which was violated and a refund of all or a part of the attorney's fees received should be made.

Because Lyon provided no report, Duerr was obligated to make Lyon available for deposition "reasonably promptly" after designating him. *See* Tex.R. Civ. P. 195.3. Under Texas Rule of Civil Procedure 194.2(f)(3), Lyon's deposition was necessary to provide the "general substance of the expert's mental impressions and opinions and a brief summary of the basis for them," which had not been made available through the designation or through any supplementation.

Duerr initially agreed to make Lyon available for deposition on February 6, 2007—before the discovery cutoff. Lyon cancelled this deposition, and it was rescheduled by agreement after the discovery cutoff on March 1, 2007. Lyon again cancelled. Fleming insisted on a new date within the next two weeks because of the looming trial scheduled to begin on April 23, 2007. Fleming offered to depose Lyon in early March, but Lyon had other commitments. Duerr offered to make Lyon available on dates in late March or early April. Fleming contended that these dates were too close to the April 23, 2007 trial. On April 3, 2007, Fleming moved to strike Lyon as an expert witness in the case.

Duerr filed three documents on April 13, 2007: a response to Fleming's motion for summary judgment; a motion for a contin-

---

4. The dispute over striking Duerr's legal malpractice expert does not affect the summary judgment granted in favor of Brown on Duerr's legal malpractice claim. By the time Duerr's expert was stricken, summary judgment already had been granted in favor of Brown on all claims against Brown, including legal malpractice.

uance of the summary judgment hearing; and a response to Fleming's motion to strike Duerr's legal malpractice expert. In his response to Fleming's motion to strike, filed on April 3, 2007, Duerr included a report by Lyon addressing the scope and basis of his opinion. The trial court considered these motions on April 20, 2007, only three days before the scheduled trial, at a single hearing that encompassed Fleming's motion for final summary judgment filed March 28, 2007.

The trial court heard both sides with respect to all motions pending at the hearing, and thereafter signed its order granting Fleming's motion for final summary judgment and simultaneously granting Fleming's motion to strike Lyon. The trial court stated:

> The record of the cause seems undisputed: It was not until April 13, 2007, via response to motion for summary judgment and ten days prior to the trial setting, that Defendants were afforded their first peek at the nature of Mr. Lyon's expert opinions in this cause. Prior to that time, Plaintiff's disclosures provided nothing more than an indication that Mr. Lyon would testify about the standard of care and breach thereof. The Court is mindful of and sympathetic with Plaintiff's counsel's personal issues; however, those issues, which occurred during 2006, do not explain a failure to comply with expert disclosures in 2007 of failure to timely seek relief from the Court's scheduling order. The Court determines that the motion must be GRANTED.

■ The failure to provide expert information as required by the rules is sanctionable by exclusion of that expert's report. *See* Tex.R. Civ. P. 193.6; *Moore v. Mem'l Hermann Hosp. Sys., Inc.,* 140 S.W.3d 870, 875 (Tex.App.–Houston [14th Dist.] 2004, no pet). To avoid this sanc-

tion, Duerr had to demonstrate that his failure to make such disclosures would not have unfairly surprised or prejudiced Fleming, or that his failure to make such disclosures was for good cause. *See* Tex.R. Civ. P. 193.6; *Moore,* 140 S.W.3d at 875.

■ The trial court acted within its discretion in striking Lyon and his affidavit. The trial court was entitled to conclude that Fleming was prejudiced by the failure to (1) make Lyon available for deposition, or (2) provide Fleming with Lyon's expert report. Similarly, Duerr did not establish good cause for waiting until the eve of trial to begin engaging in discovery, or for failing to make his expert witness available until after the close of discovery. Duerr's only argument was that Fleming did not make sufficient concessions to Duerr in scheduling Lyon, and that any failure to make Lyon available was not due to Duerr's lack of willingness. The trial court acted within its discretion in concluding that Duerr failed to establish good cause under Rule 193.6.

■ Duerr cannot prevail on appeal even if Lyon's affidavit is considered. A legal malpractice plaintiff must prove: (1) the attorney owed the plaintiff a duty of care; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damage occurred. *Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 670 (Tex.App.–Houston [1st Dist.] 1996, no writ). A legal malpractice claim must be supported by expert testimony. *See Alexander v. Turtur & Assocs., Inc.,* 146 S.W.3d 113, 119–20 (Tex.2004). When the asserted legal malpractice involves the results of prior litigation, the plaintiff bears the additional burden of proving that, "but for" the attorney's breach of duty, he would have prevailed on the underlying cause of action and would have been entitled to judgment.

*See Greathouse,* 982 S.W.2d at 172; *Schlager v. Clements,* 939 S.W.2d 183, 186–87 (Tex.App.–Houston [14th Dist.] 1996, writ denied). This requirement is known as the "suit within a suit" requirement. *See Greathouse,* 982 S.W.2d at 173.

■ Fleming's no-evidence motion for summary judgment on legal malpractice contends that Duerr failed to raise a fact issue as to whether the alleged legal malpractice was the proximate cause of Duerr's damages. Even if Lyon's report had been considered, that expert report could not forestall summary judgment because Lyon failed to establish that Duerr would have prevailed in his underlying claims for additional benefits.[5] The expert report by Robert Charles Lyon makes several conclusory statements to the effect that Fleming's negligent acts were the proximate cause of Duerr's damages. However, Lyon does not state that Duerr would have prevailed on the underlying requests for additional benefits. Lyon does not establish that Duerr was eligible for a greater recovery than that already received under the settlement agreement. Fleming has contended that Duerr was not entitled to any greater payout than that already received because (1) Duerr's hip dislocation occurred four days before his covered revision surgery, making him ineligible for Matrix IV recovery;[6] (2) Duerr's own physician provided the report upon which his claim was denied in regards to Matrix V, and he failed to establish that Duerr was more severely injured; (3) Duerr himself filed for recovery under Matrix II and successfully recovered

$36,000, negating any harm done by defendants as to the Matrix II claims; and (4) all appeals had been exhausted when the final order of the special master declined Duerr's claims.

To establish a viable legal malpractice claim, Duerr had to establish that he would have prevailed on the allegedly mishandled claims. Lyon's affidavit did not establish this requirement. *Aiken,* 115 S.W.3d at 29; *Greathouse,* 982 S.W.2d at 172. Therefore, Duerr's legal malpractice against Fleming would not have survived Rule 166(a)(i) even if Lyon's affidavit had been considered.

Accordingly, Duerr's second issue is overruled.

### *Continuance*

Duerr's third issue contends that the trial court abused its discretion in denying a continuance to the summary judgment hearings. Duerr twice moved for continuances. The first motion was filed in response to Fleming's February 16, 2007 partial summary judgment motion and Brown's February 23, 2007 full summary judgment motion. This first motion for a continuance included a request for a new trial date and an extension for discovery. This motion was filed on the same day of the hearing on the Brown and Fleming motions for summary judgment. Although Duerr contends there is some doubt about whether the trial court ruled on this motion for continuance, the trial court specifically denied Duerr's request in an order signed March 26, 2007, which also granted the summary judgments that had been requested by Brown and Fleming.

---

5. Duerr also contends that Fleming failed to file for $36,000 under Matrix II. Duerr had shown no damage because he filed for the recovery and was paid the full $36,000 available under Matrix II. Even if Fleming was negligent with regard to a Matrix II filing, Duerr suffered no harm.

6. Duerr's hip dislocation occurred on September 29, 2000, and his covered revision surgery (CRS) occurred on October 3, 2000. To be eligible for benefits under Matrix IV, an individual's hip dislocation had to have taken place within 90 days following the CRS.

Duerr's second motion for continuance was filed on April 13, 2007—on the eve of trial scheduled for April 23, 2007—in response to Fleming's motion for final summary judgment on Duerr's malpractice claim. Duerr requested a continuation of the hearing, re-opening of discovery, and a new scheduling order. On April 20, 2007, the trial court denied these requests and granted summary judgment to Fleming on Duerr's legal malpractice claim.

■ Courts have considered the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file; the materiality and purpose of the discovery sought; and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Two Thirty Nine Joint Venture*, 145 S.W.3d at 161.

■ The first factor is the length of time the case has been on file. *McMahan v. Greenwood* is instructive in this regard. *See McMahan*, 108 S.W.3d at 498. The lawsuit in *McMahan* was filed nearly 28 months before the granting of summary judgment, with 16 months in between subject to a bankruptcy stay, allowing the parties a full year to conduct discovery. *Id.* at 498–99, the trial court found this to be sufficient time for discovery and denied the continuance; on appeal we concluded that the trial court acted within its discretion is so determining. *Id.* at 499.

In the case before us, the parties had from February 16, 2006—when the original petition was filed—until February 22, 2007—when the docket control order ended discovery—to conduct discovery and to prepare for an April, 23 2007 trial. The trial court acted within its discretion in concluding that this was sufficient time for discovery. This factor weighs in favor of Fleming and Brown. *See Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex.App.–Houston [1st Dist.] 2001, no pet.) (plaintiff has obligation to research a case before bringing suit; trial court within discretion to deny continuance, noting seven months was sufficient to effect discovery and motion for summary judgment was reasonable).[7]

■ The second factor considers the materiality and purpose of the discovery sought. When the basis for the requested continuance is "want of testimony," the movant must show that (1) the testimony is material; (2) due diligence has been used to obtain the testimony; (3) there is an explanation given for the failure to obtain the testimony; and (4) the testimony cannot be procured from another source. Tex.R. Civ. P. 252; *see Blake v. Lewis*, 886 S.W.2d 404, 409 (Tex.App.–Houston [1st Dist.] 1994, no writ) (proponent of a motion for continuance should state what specific discovery is material and show why it is material). While Duerr asserted his need to depose the attorneys for Fleming and Brown, he never states what their depositions would demonstrate or how this information would assist Duerr or the court. *See Perrotta*, 47 S.W.3d at 576 (appellant failed to show how additional discovery was pertinent). A motion for a continuance must "reflect any need for additional discovery or what might be expected to be developed as evidence with additional depositions." *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 370 (Tex.App.–El Paso 1993, no writ) (without this showing, the record reflects no basis for determin-

7. Brown points out that the second motion for a continuance was filed after all claims against it already had been resolved in the first order granting motion for summary judgment.

ing that the trial court abused its discretion). Because Duerr did not satisfy this standard, this factor weighs in the favor of Fleming and Brown.

 Finally, we consider the diligence of the party seeking continuance. It is "well established that the failure of a litigant to diligently utilize the rules of civil procedure for discovery purposes will not authorize the granting of a continuance." *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988); *see also Schmidt v. Bell,* No. 01–06–00161–CV, 2008 WL 921702, at *1 (Tex.App.–Houston [1st Dist.] April 3, 2008, no pet. h.) (in addition to describing the evidence sought, a verified motion must state with particularity the diligence used to obtain the evidence, and explain why the continuance is necessary). In this case, Duerr had nearly a year to engage in discovery and failed to utilize available discovery methods until after the discovery period ended. When a party is prevented from deposing opponents because it failed to act timely, that is a "predicament of its own making" and the "risk" a party takes by not "diligently pursuing discovery." *Wood Oil Distrib., Inc.,* 751 S.W.2d at 865.

In this case, "nothing prevented [Duerr] from conducting discovery earlier in the case, and his failure to make diligent efforts to secure discovery did not authorize the granting of a continuance." *See Perrotta,* 47 S.W.3d at 576–77; *see also Carbonara v. Tex. Stadium Corp.,* 244 S.W.3d 651, 659 (Tex.App.–Dallas Jan.24, 2008, no pet. h.) (while appellant explained unsuccessful discovery attempts since filing of summary judgment, appellant never explained why discovery was not conducted before). This factor also weighs in favor of Fleming and Brown.

Because all of the pertinent factors weigh in favor of Fleming and Brown, we conclude that the trial court acted within its discretion in denying both requests for a continuance. Accordingly, Duerr's third issue is overruled.

### Conclusion

The trial court's judgment is affirmed.