Opinion issued December 31, 2009









 


 


 



In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00025-CV






JAHN ERIC HUMPHREYS, Appellant


v.


RICHARD DELCOURT, Appellee






On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 850117






MEMORANDUM OPINION


 In this legal malpractice suit, appellant, Jahn Eric Humphreys, appeals the trial
court's judgment in favor of his former client, appellee Richard Delcourt. In three
issues, Humphreys contends that (1) the trial court erred by awarding attorney's fees
to Delcourt because attorney's fees are not recoverable in a legal malpractice suit, (2)
the trial court erred by refusing to submit a jury question concerning the proportionate
responsibility of defaulting co-defendant, David Person, who is not a party to this
appeal, and (3) the evidence is legally insufficient to support the jury's finding that
"the negligence of [Humphreys] proximately caused any damages." 

 We reverse and render judgment that Delcourt take nothing by his suit against
Humphreys.

Background


 In 1996, Delcourt became divorced from his wife, Mary Delcourt, in a Harris
County court. Mary was awarded primary managing conservatorship of their son and
daughter, and Delcourt was ordered to pay child support and insurance. Shortly
after, Mary and the children moved to Montgomery County. Amidst allegations that
Mary had become abusive to the children, Delcourt sought to modify the decree to
name himself the primary managing conservator. 

 In 1999, Delcourt hired attorney Robert B. Peltier to represent him in the
matter. Peltier is not a party to this suit. Because Montgomery County had become
the domicile of the children, Peltier had the case transferred to Montgomery County,
where he filed Delcourt's original petition to modify. Thereafter, the case sat idle. 
In April 2003, according to Delcourt, he received notice that the Montgomery County
court intended to dismiss his case for want of prosecution. In September 2003,
Delcourt fired Peltier.

 In November 2003, Delcourt called the law firm of Humphreys & Humphreys,
seeking representation in unrelated business matters. Delcourt met with attorney
David Person. Delcourt sought the return of $3,500 that he had spent to rent an
allegedly defective recreational vehicle ("RV") from "Bay Area RV Rentals" for a
family trip to New Mexico the "prior August." In addition, Delcourt sought to pursue
a business claim against Synergy Company, the details of which are not before us. 
Further, Delcourt wished to pursue a claim against Peltier to recover unearned
portions of his retainer.

 Delcourt signed an engagement contract with "Humphreys & Humphreys,"
authorizing the "Firm and David Person" (1) to "institute and maintain, and to prosecute
the cause of action." Delcourt paid a $500 retainer and the record reflects that
appellant, Jahn Eric Humphreys, endorsed the check and deposited it into his trust
account. It is undisputed that Delcourt did not have any other contact with
Humphreys. Delcourt contends that, thereafter, all of his legal matters sat idle. 
Humphreys contends that Person notified Delcourt that, after research, Person had
deemed that the claims were not viable and that he would not be pursuing them.

 On February 4, 2004, having discharged Peltier, Delcourt contracted with
"Humphreys & Humphreys and David Person, Esq." (2) to take up his suit for
modification of conservatorship of his children. Delcourt paid a $2,500 retainer,
which Person endorsed and deposited into an account unknown to Humphreys. 
Delcourt explained to Person that the suit had been transferred and filed in
Montgomery County, and they discussed the additional expenses Person would incur
in traveling from the firm's location in Seabrook to Montgomery County to prosecute
the suit. The engagement contract reflects a handwritten notation, "Client agrees for
reasonable hotel fees for lawyer as necessary case." In March 2004, Person filed
Delcourt's motion to modify in Harris County. 

 Thereafter, Delcourt became increasingly unable to reach Person by telephone
regarding the status of his case. Finally, in May 2004, Delcourt reached Person. 
According to Delcourt, Person said that Humphreys handled all of the family law
cases for the firm and that Delcourt would need to set an appointment to discuss his
case with Humphreys. Delcourt refused, told Person that he was fired, and demanded
the return of his files and the retainer. Person told Delcourt to come to the firm on
Friday, June 4, to pick up his files and a refund. When Delcourt arrived at the firm,
however, nobody was there. 

 Delcourt called Person, and they agreed that Delcourt would instead meet him
at the firm on Monday, June 7. When Delcourt arrived, Person was not there again. 
Delcourt was angry, and a secretary called Humphreys. Humphreys had the secretary
hand the telephone to Delcourt. It is undisputed this was Delcourt's first actual
contact with Humphreys. According to Delcourt, Humphreys said that Person worked
for him and that, before any files would be returned or refunds would be issued,
Delcourt would have to set an appointment to meet with Humphreys. Delcourt left.

 On June 8, 2004, Delcourt wrote a letter demanding the return of his files and
a refund of unearned sums. Humphreys responded by faxed letter, asserting that he
had never denied Delcourt his files or a refund, and denying that either he or Person
had ever represented Delcourt in any legal matters. Also in his letter, Humphreys
directed Delcourt to a provision in their contract that "calls for a non-refundable
retainer" in the "family law case," and asked Delcourt to execute "the enclosed
Motion to facilitate David Person's and/or Humphreys and Humphreys termination."

 On June 9, 2004, Delcourt wrote another letter, contending that nothing
substantive had been done to advance his cases; that he had instructed Person to
proceed on the RV and Synergy cases, but nothing had been done; that his
modification suit had been "sitting in the DWOP bin in Montgomery County since
April 2003," but nothing had been done; and that the suit Person filed in Harris
County was moot because, as Person was aware, the case had been transferred. On
June 17, 2004, Delcourt received his files and a refund of $2,465 of $3,000.

 In 2005, Delcourt retained Jack Riley to represent him in the suit to modify. 
The matter was heard in County Court at Law No. 1 of Montgomery County in 2005
and into 2006. Delcourt was awarded primary managing conservatorship of the
children, his child support and insurance obligations ended, and Mary was ordered
to begin paying child support and insurance. 

 On October 4, 2005, Delcourt filed the instant legal malpractice suit against
Humphreys and Person. In his petition, Delcourt alleged that Humphreys and Person
had "failed to perform and/or were negligent in performing legal services, including
but not limited to, filing the custody matter in the wrong county." Delcourt averred
that Humphreys and Person had "negligently caused additional damage and delayed
the resolution of the custody issues, and other legal matters." Delcourt sought
damages for mental anguish in the past and future, "unnecessary attorney's fees," and
loss of child support payments.

 Humphreys answered with a general denial. On November 28, 2007, an
"Interlocutory Default Judgment" was rendered against Person in favor of Delcourt,
stating that Person, although duly cited, did not answer the suit and that Delcourt
could later present evidence as to the exact nature and amount of his damages.

 On September 9, 2008, the matter of Humphreys's liability and the damages
issue were tried to a jury. Riley testified that he was familiar with the standard of care
for an attorney representing a client in Delcourt's situation and that, if the attorney
knew that the case had been transferred to Montgomery County, filing Delcourt's suit
in Harris County was below the standard of care. In addition, Riley testified that
Delcourt incurred $1,400 to $2,000 in additional expenses based on the actions or
inaction of Humphreys and Person, over and above what it would have cost if
Delcourt had come to Riley initially. Riley testified that he had to substitute in as
counsel in the Harris County suit and have it dismissed, and he had to substitute in
as counsel in the Montgomery County case, file a motion to retain the case on the
docket, and attend a hearing. In addition, Riley testified that, had Delcourt's case
been timely prosecuted, he would have been receiving child support and insurance
instead of paying it out.

 Delcourt requested damages from the jury as follows: (1) $3,500 in the RV case
that was never prosecuted; (2) $2,000 or $8,000 in the Peltier case that was never
prosecuted (3); (3) $535 for the remainder of the $3,000 retainer paid to Person; (4)
$2,000 additional attorney's fees paid to Riley; (5) $14,535 in child support for the
four-month period that Humphreys and Person failed to prosecute the modification
suit; and (6) $32,000 in attorney's fees for preparation and trial of the instant suit.

 At the close of trial, Delcourt submitted four special issues to the jury. In
Question 1, the jury was asked whether Delcourt was "a client of Jahn Eric
Humphreys." The jury answered in the affirmative. In Question 2, the jury was asked
whether "the negligence, if any, of Jahn Eric Humphreys proximately cause[d] the
occurrence in question." The jury answered in the affirmative. In Question 3, the
jury was asked, "What sum of money, if paid now in cash, would fairly and
reasonably compensate [Delcourt] for his damages, if any, that resulted from the
occurrence in question?" The jury answered, "$5,000." In Question 4, the jury was
asked, "What sum of money do you find is a reasonable and necessary fee for the
services of [Delcourt's] attorney in this case?" Concerning "preparation and trial of
this case," the jury answered, "$32,000." 

 The trial court entered judgment on the verdict. The court held that "the jury
finds in favor of Plaintiff, Richard Delcourt, and against Defendants Joint and Several
Liability [sic], Jahn Eric Humphreys and David Person, in the amount of $5,000." In
addition, the trial court found that, "based on the jury's verdict," Delcourt was
"entitled to the sum of $32,000.00 . . . , as attorney's fees, to bear interest at the rate
of 6% per annum from the date this judgment is signed until paid." 

 Humphreys's motion for new trial was overruled by operation of law. This
appeal by Humphreys ensued.

Sufficiency of the Evidence

 In his third issue, Humphreys contends that the evidence is legally insufficient
to support the jury's finding that "the negligence of [Humphreys] proximately caused
any damages." Specifically, Humphreys contends that Delcourt "failed to satisfy the
proximate cause requirement" of his legal malpractice claim.

A. Standard of Review

 In a legal sufficiency review, we "consider evidence in the light most favorable
to the verdict, and indulge every reasonable inference that would support it." City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We will sustain a legal
sufficiency or "no-evidence" challenge if the record shows one of the following: (1)
a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the
court from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence
establishes conclusively the opposite of the vital fact. Id. at 810. If there is more than
a scintilla of evidence to support the challenged finding, we must uphold it. Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.
1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more
than create a mere surmise or suspicion of its existence, the evidence is no more than
a scintilla and, in legal effect, is no evidence." Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61,
63 (Tex. 1983)). However, if the evidence at trial would enable reasonable and
fair-minded people to differ in their conclusions, then jurors must be allowed to do
so. City of Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003). "A reviewing court cannot substitute its judgment for
that of the trier-of-fact, so long as the evidence falls within this zone of reasonable
disagreement." City of Keller, 168 S.W.3d at 822. "The final test for legal sufficiency
must always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review." Id. at 827.

B. Guiding Legal Principles

 To prevail on a legal malpractice claim, a plaintiff must prove that (1) the
attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the
breach proximately caused damages; and (4) the plaintiff was damaged. Cosgrove
v. Grimes, 774 S.W.2d 662, 665 (Tex. 1989). 

 An attorney owes to his client a duty to act with ordinary care, that is, in a
manner consistent with the standard of care that would be expected to be exercised
by a reasonably prudent attorney. See id. at 664. The "standard is an objective
exercise of professional judgment, not the subjective belief that [the attorney's] acts
are in good faith." Id. at 665. Complaints about an attorney's care, skill, or diligence
in representing a client implicate this duty of ordinary care and sound in negligence.
See Rangel v. Lapin, 177 S.W.3d 17, 24 (Tex. App.--Houston [1st Dist.] 2005, pet.
denied) (stating that, regardless of theory plaintiff pleads, if crux of the complaint is
that plaintiff's attorney did not provide adequate legal representation, claim is one for
legal malpractice). "[A] lawyer can commit professional negligence by giving an
erroneous legal opinion or erroneous advice, by delaying or failing to handle a matter
entrusted to the lawyer's care, or by not using a lawyer's ordinary care in preparing,
managing, and prosecuting a case." Murphy v. Gruber, 241 S.W.3d 689, 693 (Tex.
App.--Dallas 2007, pet. denied); see Alexander v. Turtur & Assocs., Inc., 146 S.W.3d
113, 119 (Tex. 2004). 

 In addition, the plaintiff must demonstrate that any alleged damages, including
attorney's fees, were proximately caused by the breach of a duty by the defendant. 
See Cosgrove, 774 S.W.2d at 665; Judwin Props., Inc. v. Griggs & Harrison, 911
S.W.2d 498, 507 (Tex. App.--Houston [1st Dist.] 1995, writ denied). Proximate
cause requires proof of both cause-in-fact and foreseeability. Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). "Cause-in-fact" means that the
defendant's act or omission was a substantial factor in bringing about the injury that
would not otherwise have occurred. Prudential Ins. Co. v. Jefferson Assocs., Ltd., 896
S.W.2d 156, 161 (Tex. 1995). "Foreseeability" means that the actor should have
anticipated the dangers that his negligent act created for others. Travis, 830 S.W.2d
at 98. When the causal link is beyond a jury's common understanding, expert
testimony is required. Alexander, 146 S.W.3d at 119-20.

C. Analysis 

 After a default judgment was rendered against Person, the suit moved forward
to trial on the issue of Humphreys's liability (4) and the issue of damages. (5)
 

 Humphreys does not, on appeal, dispute the jury's answer to Question 1,
namely, that he had an attorney-client relationship with Delcourt. Humphreys
admitted at trial that he endorsed Delcourt's first retainer check and deposited it into
his trust account. Also, in his brief, Humphreys confirms, "In the case at bar,
Appellee [Delcourt] contracted with Appellant [Humphreys] and co-defendant David
Person for representation regarding the modification of a custody order." 

 In Question 2, the jury was asked: "Did the negligence, if any, of [Humphreys]
proximately cause the occurrence in question?" The jury was instructed as follows:

 "Negligence" when used with respect to the conduct of [Humphreys]
means failure to use ordinary care, that is, failing to do that which an
attorney of ordinary prudence would have done under the same or
similar circumstances, or doing that which an attorney of ordinary
prudence would not have done under the same or similar circumstances.

 "Ordinary care" when used with respect to the conduct of [Humphreys]
means that degree of care that an attorney of ordinary prudence would
use under the same or similar circumstances.

 "Proximate cause" when used with respect to the conduct of
[Humphreys] means that cause which, in a natural and continuous
sequence, produces an event, and without which cause such event would
not have occurred. In order to be a proximate cause, the act or omission
complained of must be such that an attorney using ordinary care would
have foreseen that the event, or some similar event, might reasonably
result therefrom. There may be more than one proximate cause of an
event.


The jury answered, "Yes."

 On appeal, Humphreys contends that Delcourt "failed to satisfy the proximate
cause requirement." 

 "When a legal malpractice claim arises from prior litigation, the plaintiff has
the burden to prove that 'but for' the attorney's breach of duty, he or she would have
prevailed on the underlying cause of action and would have been entitled to
judgment." Greathouse v. McConnell, 982 S.W.2d 165, 172-73 (Tex.
App.--Houston [1st Dist.] 1998, pet. denied) (articulating "suit within a suit"
requirement); see also Alexander, 146 S.W.3d at 117 ("When the plaintiff's allegation
is that some failure on the attorney's part caused an adverse result in prior litigation,
the plaintiff must produce evidence from which a jury may reasonably infer that the
attorney's conduct caused the damages alleged."). In addition, the plaintiff must
show that a judgment would have been collectible. Akin, Gump, Strauss, Hauer &
Feld, L.L.P. v. Nat'l Dev. & Research Corp., No. 07-0818, 2009 WL 3494978, at
*4-6 (Tex. Oct. 30, 2009); Cosgrove, 774 S.W.2d at 666; Ballesteros v. Jones, 985
S.W.2d 485, 489 (Tex. App.--San Antonio 1998, pet. denied). 

 Delcourt asserted that he was damaged as follows: (1) $3,500 in the RV case
that was never prosecuted; (2) $2,000 or $8,000 in the Peltier case that was never
prosecuted (6); (3) $535 for the remainder of the $3,000 retainer paid to Person; (4)
$14,535 (7) in child support for the four-month period that Humphreys and Person failed
to prosecute the modification suit; (5) $2,000 in additional attorney's fees paid to
Riley; and (6) $32,000 in attorney's fees for preparation and trial of the instant suit. 
In Question 3 of the charge, the jury was asked, "What sum of money, if paid now in
cash, would fairly and reasonably compensate [Delcourt] for his damages, if any, that
resulted from the occurrence in question?" The jury answered, "$5,000."

 Humphreys contends that "Delcourt provide[d] absolutely no testimony or
evidence that he would have prevailed in the underlying actions, what damages he
would have incurred or that the negligence of [Humphreys] proximately caused any
damages."

 1. The RV action

 In the RV action, Delcourt sought the return of $3,500 that he had spent to rent
an allegedly defective RV from "Bay Area RV Rentals" for a family trip to New
Mexico the "prior August." Delcourt asserted at trial that he kept the RV for all but
the last day of the rental period, that the RV was generally defective, that some
repairs were required when he returned it to the dealer, and that he wanted his deposit
and rental fees returned. Delcourt complains that Humphreys failed to prosecute the
claim.

 Our review of the record reflects that Delcourt did not present any evidence
that he would have prevailed in the RV rental claim, what the amount of damages
would have been, or that they would have been collectible. See Akin, Gump, 2009 WL
3494978, at *4-6; Greathouse, 982 S.W.2d at 172-73. Moreover, Delcourt testified
that the RV case remained viable after he terminated his relationship with Person, yet
Delcourt decided not to pursue his claim. Delcourt did not present any evidence that
"but for" an act or omission by Humphreys, he would have prevailed in the RV suit,
or that Humphreys was the proximate cause of any injury. See Alexander, 146
S.W.3d at 117; Greathouse, 982 S.W.2d at 172-73.

 2. The Peltier action

 Delcourt sought the return of a portion of the retainer he paid to Peltier in the
modification matter. Delcourt complained that he hired Peltier in 1999 to represent
him in the matter and that Peltier had failed to diligently prosecute the case. Delcourt
fired Peltier in September 2003. Delcourt complains that Humphreys failed to
prosecute his claim.

 Delcourt did not present any evidence that "but for" Humphreys's conduct, he
would have prevailed in a suit against Peltier. See Duerr v. Brown, 262 S.W.3d 63, 
76-77 (Tex. App.--Houston [14th Dist.] 2008, no pet.) (stating that to establish
viable legal malpractice claim, plaintiff must establish that he would have prevailed
on allegedly mishandled claims). In addition, Delcourt did not present any evidence
that any damages he was granted against Peltier would have been collectible. See
Cosgrove, 774 S.W.2d at 666; Ballesteros, 985 S.W.2d at 489; see also Akin, Gump,
2009 WL 3494978, at *4-6 (reaffirming that certain evidence of collectibility is
required). 


 3. The modification action

 Although Delcourt later prevailed in his modification suit, he was required to
show evidence that the damages that he alleges in this suit, including Riley's
attorney's fees, were proximately caused by Humphreys's misconduct. See
Alexander, 146 S.W.3d at 117; Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d
498, 507 (Tex. App.--Houston [1st Dist.] 1995, writ denied) ("The law requires a
necessary showing of a causal relation between the act complained of and the injury
sustained."). To prove proximate cause, Delcourt was required to prove that (1)
Humphreys's acts or omissions were a substantial factor in bringing about an injury
that would not otherwise have occurred and (2) Humphreys should have anticipated
the dangers that his negligent acts created for Delcourt. See Alexander, 146 S.W.3d
at 117; Prudential Ins. Co., 896 S.W.2d at 161; Travis, 830 S.W.2d at 98.

 We first consider whether there is evidence that any act or omission by
Humphreys was a substantial factor in bringing about an injury in the modification
proceeding that would not have otherwise occurred. See Prudential Ins. Co., 896
S.W.2d at 161. Delcourt did not sue the firm; rather, Delcourt alleged in his petition
a direct liability claim against "Jahn Eric Humphreys, an Individual" and maintained
throughout trial that Humphreys was liable as a principal. Hence, Delcourt must
point to evidence of an act or omission by Humphreys.

 Delcourt does not direct us to, and we do not find, any evidence in the record
of an affirmative act by Humphreys in the modification matter. It is undisputed that
Delcourt had never spoken with Humphreys until after Delcourt had fired Person, and
that Delcourt's telephone discussion with Humphreys on June 7, 2005, concerning
the return of Delcourt's files, was the first and only time Delcourt ever spoke with
Humphreys. Further, there is no evidence in the record, and Delcourt does not aver,
that it was Humphreys who erroneously filed the suit in the Harris County court. 
Hence, we consider only whether there was an omission by Humphreys that was a
substantial factor in bringing about an injury in the modification proceeding that
would not have otherwise occurred. See Prudential Ins. Co., 896 S.W.2d at 161.

 Delcourt sought child support damages for the period during which his matter
was at Humphreys's firm. Even if we assume, without deciding, that Delcourt may
recover child support as damages, there is no evidence in the record before us that
Delcourt suffered an injury by having to continue to pay child support and insurance
during the four-month period at issue. Delcourt conceded at trial that his
modification suit was originally filed in 1999. In February 2004, when Delcourt first
presented his modification matter to Person, the matter had already been sitting idle
for over five years. Delcourt acknowledged that the suit could not have been tried to
a close before May 2004, when Delcourt fired Person. Hence, during the four-month
period at issue, the children would have remained with Mary, and Delcourt would still
have been paying child support, regardless of any omission by Humphreys. There is
no evidence that any omission by Humphreys was a substantial factor in bringing
about an injury that would not have otherwise occurred. See Prudential Ins. Co., 896
S.W.2d at 161. Moreover, it is undisputed that Delcourt's suit remained viable after
the alleged breach. Riley testified that Delcourt first came to see him in 2005. The
case was tried in 2005 and 2006, and Delcourt prevailed. Hence, there is no evidence
of an injury.

 Delcourt also sought the return of certain legal fees that he paid to Riley. Riley
testified that Delcourt incurred $2,000 in additional legal fees, over and above what
he would have paid to Riley to prosecute the case, had Delcourt come to him initially. 
Riley testified that he worked an additional 7 to 10 hours (1) to substitute in to the
Harris County suit and have it dismissed and (2) to substitute in to the Montgomery
County suit and move the court to retain the suit. 

 First, there is no evidence in the record that Humphreys filed the Harris County
suit. To the contrary, Delcourt testified that Person filed the suit. Second, there is no
evidence that Delcourt suffered an injury with regard to the Montgomery County suit. 
The Montgomery County suit was originally filed by Peltier in 1999. Having
dismissed Peltier, Delcourt would have incurred legal fees to substitute any new
attorney and to move the court to retain the case. Delcourt complained at trial that
Humphreys and Person wholly failed to do either. Hence, Delcourt was not injured
when he incurred fees, for the first time, to have an attorney (Riley) substitute in to
the Montgomery County suit and retain the case. 

 4. Unearned retainer

 The record shows that Delcourt wrote two checks to "David Person." The first
check, which was for $500, was in conjunction with an engagement contract
authorizing the "Firm and David Person" to "institute and maintain, and to prosecute"
his RV, Peltier, and Synergy (8) causes of action. The record reflects that Humphreys
endorsed the check and deposited it into a trust account. The second check, which
was for $2,500, was in conjunction with an engagement contract authorizing
"Humphreys & Humphreys and David Person, Esq." to take up his modification suit. 
The record shows that Person endorsed and deposited the check into an account
unknown to Humphreys. Person refunded to Delcourt $2,465 of the total $3,000
retainer. By his suit, Delcourt sought a refund of the remaining $535 as unearned
retainer. 


 Again, Delcourt brought a direct liability claim against Humphreys,
individually, but the record lacks any evidence that the $535 at issue constitutes
damages that were proximately caused by any direct act or omission by Humphreys. 
See Cosgrove, 774 S.W.2d at 665; Judwin Props., Inc., 911 S.W.2d at 507. 

 In sum, we conclude that Delcourt failed to present any evidence that
Humphreys proximately caused any damages. See Alexander, 146 S.W.3d at 117;
Prudential Ins. Co., 896 S.W.2d at 161; Greathouse, 982 S.W.2d at 172-73. We hold
that the evidence is legally insufficient to support Humphreys's liability for
negligence. See City of Keller, 168 S.W.3d at 822; Ford Motor Co., 135 S.W.3d at
601.

 Accordingly, we sustain Humphreys's third issue. 

 Having sustained Humphreys's third issue concerning his liability for
negligence, which obviates the proportionate liability and damages issues, we do not
reach Humphreys's contentions that the trial court erred by refusing to submit a
question to the jury on proportionate liability or that the trial court erred by entering
damages based on attorney's fees for preparation and trial of the instant suit. 





Conclusion

 We reverse the trial court's judgment and render judgment that Delcourt take
nothing by his suit against Humphreys. 







 Laura Carter Higley

 Justice


Panel consists of Justices Jennings, Higley, and Massengale.

1. The language "and David Person" was handwritten in and initialed.
2. Again, Person's name was handwritten in and initialed. 
3. The record conflicts regarding the amount Delcourt sought.
4. Delcourt alleges that Humphreys was liable as a principal in this case and not under
any vicarious theories. Hence, Person's default is not presumed to bind Humphreys
or to dispose of all parties and all issues in this case. See Brazos Valley Cmty. Action
Agency v. Robinson, 900 S.W.2d 843, 845-46 & n.1 (Tex. App.--Corpus Christi,
1995, writ denied). 
5. In a no-answer default, a defaulting defendant admits all facts properly pleaded in the
plaintiff's petition except for the amount of unliquidated damages. Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). Thus, the plaintiff is only
required to prove its claim for unliquidated damages. Id.; see Tex. R. Civ. P. 243.

 

6. The record conflicts regarding the amount Delcourt sought.
7. Delcourt's monthly child support obligation was $475 per month and $568 for
insurance. After the modification, pursuant to the trial court's order, Mary began
paying $210 in child support and $371 in insurance.
8. Although a claim against Synergy Company was raised at trial, Delcourt did not ask
the jury for any damages. The Synergy case was later prosecuted and Delcourt did not
prevail.