Affirmed and Memorandum Opinion filed March 8, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00931-CV



 

Dr. Janine Charboneau
McInnis, D.V.M., Appellant

V.

Michael Mallia, J.D., The
Mallia Law Firm, P.C., and Tommy Hastings, J.D., Appellees

 



On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 2005-34616



 

MEMORANDUM OPINION

 

Dr. Janine Charboneau McInnis, D.V.M. appeals the
trial court’s no-evidence summary judgment in favor of the law firm and lawyers
who represented her in a prior suit.  We affirm.

BACKGROUND

McInnis underwent surgery on her spine in 1998.  She
contends that she suffered complications related to the surgery and developed a
chronic disorder called arachnoiditis.  Michael Mallia, J.D., The Mallia Law Firm,
P.C., and Tommy Hastings, J.D. (collectively, the “Law Firm”) represented
McInnis in her medical malpractice suit against her surgeon and the
professional corporation to which the surgeon belonged, the Pain and Health
Management Center, P.A. (“P&H”).  The Law Firm agreed to non-suit P&H
on the first day of trial, and McInnis’s medical malpractice claim against the
surgeon was tried to a jury.  The jury returned a verdict in favor of the
surgeon.

McInnis subsequently filed this pro se suit against
the Law Firm, alleging that her loss at trial in the underlying medical
malpractice suit was attributable to negligence, fraud, and breaches of
fiduciary duty.[1] 


McInnis generally asserts that the Law Firm failed to
represent her adequately in the medical malpractice suit.  McInnis also asserts
in her live pleading that the Law Firm’s decision to non-suit P&H was
prompted by a phone call from Dr. Charnov, who also belonged to P&H at the
time of the suit.  She states:

Dr. Charnov’s credentials and
business experience had been beneficial to [the Law Firm] and could be in the
future also.  [Given] the fact that [the Law Firm] handles medical malpractice
cases against doctors that can very well involve people who have or are in
pain, Dr. Charnov’s credentials and experience as a pain doctor are very
valuable to a Plaintiff’s attorney as an expert.  It can be hard to find a
doctor expert willing to testify against another doctor.  [The Law Firm] needed
to stay in good standing with Dr. Charnov.  It is believed that Dr. Charnov had
worked for [the Law Firm] before [it] took representation on [McInnis’s] case. 

McInnis contends that P&H
was a necessary party in the medical malpractice suit because its
post-operative care proximately caused her injuries.  McInnis asserts that the
Law Firm told her it “did not matter” if P&H remained in the law suit, and
that the Law Firm “failed to disclose the risk” associated with non-suiting
P&H.    




PROCEDURAL HISTORY

The Law Firm initially filed a no-evidence motion for
summary judgment eight months before the end of the discovery period set by the
trial court.  The trial court denied McInnis’s motion for continuance and granted
the Law Firm’s motion for summary judgment.  McInnis appealed; this court
reversed the trial court’s judgment and remanded the case on June 17, 2008 so
that McInnis would have an adequate opportunity to conduct discovery before
responding to the Law Firm’s no-evidence summary judgment motion.  See
McInnis v. Mallia, 261 S.W.3d 197 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).

On remand, the trial court entered a new docket
control order under which the discovery period ended on April 24, 2009.  The
Law Firm filed a no-evidence summary judgment motion on February 4, 2009.  At
McInnis’s request, the trial court extended the discovery period until May 25,
2009 and postponed consideration of the Law Firm’s motion.  

The Law Firm filed an amended no-evidence summary
judgment motion under Texas Rule of Civil Procedure 166a(i) on May 20, 2009,
arguing that (1) McInnis must provide expert testimony on causation to survive
a no-evidence summary judgment on the professional negligence claim; and (2)
McInnis’s fraud and breach of fiduciary duty claims are not freestanding claims
distinct from her claim for professional negligence.  The Law Firm also argued
that there was no evidence to support a freestanding claim for breach of
fiduciary duty.  McInnis filed a motion to compel certain discovery responses
from the Law Firm and asked for additional time to conduct discovery.  The
trial court denied McInnis’s requests for additional time to conduct discovery;
it signed an order granting the Law Firm’s motion for summary judgment on
August 10, 2009.[2] 
McInnis filed a motion for new trial, which was overruled by operation of law.

ANALYSIS

McInnis argues in Issue I that the trial court erred
in granting the Law Firm’s no-evidence motion for summary judgment because (1)
she proffered sufficient evidence to defeat a no-evidence summary judgment; (2)
her fraud and breach of fiduciary duty claims are distinct from her claim for
professional negligence; and (3) the Law Firm’s motion did not identify
elements of her fraud and breach of fiduciary duty claims for which there is no
evidence, as required under Texas Rule of Civil Procedure 166a(i).  She argues
in Issue II that the trial court erred in denying her request for additional
time to conduct discovery and motion to compel.[3] 


I.         No-Evidence Summary
Judgment

An appellate court applies de novo review to a
grant of summary judgment, using the same standard that the trial court used in
the first instance.   Duerr v. Brown, 262 S.W.3d 63, 68 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (citing Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005)).  A party may move for a no-evidence
summary judgment after an adequate time for discovery has passed.  Id.
(citing Tex. R. Civ. P. 166a(a), (i), and McMahan v. Greenwood,
108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

A no-evidence motion for summary judgment must be
granted if (1) the moving party asserts that there is no evidence of one or
more specified elements of a claim or defense on which the adverse party would
have the burden of proof at trial; and (2) the respondent produces no summary
judgment evidence raising a genuine issue of material fact on those elements.  Tex.
R. Civ. P. 166a(i).  In reviewing a no-evidence motion for summary judgment, we
view all of the summary judgment evidence in the light most favorable to the
non-movant, “crediting evidence favorable to that party if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not.” Duerr,
262 S.W.3d at 69 (citing Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  The non-moving party is not obligated to marshal its proof, but
it is required to present evidence that raises a genuine fact issue on the
challenged element.  Id. (citing Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002)).  

A.        Professional Negligence

McInnis argues on appeal that the trial court erred
by granting a no-evidence summary judgment motion on her professional
negligence claim because McInnis (1) submitted sufficient evidence on each
element of her professional negligence claim, including causation; and (2) was
not required to present expert testimony or an expert report on causation.

A plaintiff asserting professional negligence must
prove that (1) the attorney owed the plaintiff a duty of care; (2) the attorney
breached that duty; (3) the breach proximately caused the plaintiff's injuries;
and (4) damage occurred.  Duerr, 262 S.W.3d at 76 (citing Farah v.
Mafrige & Kormanik, P.C., 927 S.W.2d 663, 670 (Tex. App.—Houston [1st
Dist.] 1996, no writ)).  

In a professional negligence suit arising from a
prior litigation, the plaintiff bears the additional burden of proving that,
“but for” the attorney’s breach of duty, the plaintiff would have prevailed on
the underlying cause of action and would have been entitled to judgment.  Duerr,
262 S.W.3d at 76; McInnis, 261 S.W.3d at 201.  This causal link is known
as the “suit within a suit” requirement and generally must be proved by expert
testimony.  Alexander v. Turtur & Assocs., Inc., 146 S.W.3d 113,
119–20 (Tex. 2004); Duerr, 262 S.W.3d at 76–77; McInnis, 261
S.W.3d at 201.  This is because “the wisdom and consequences of . . . tactical
choices made during litigation are generally matters beyond the ken of most
jurors.”  Alexander, 146 S.W.3d at 119.  

McInnis claims she submitted sufficient evidence
regarding causation to support her professional negligence claim.  McInnis
points to an excerpt from the pleadings filed by attorneys on behalf of
Advanced Neuromodulation Systems, Inc. in the underlying medical malpractice
action.  Advanced Neuromodulation manufactured a product that was placed in
McInnis’s back during the surgery; it was a co-defendant in the medical
malpractice suit.  In its pleading, Advanced Neuromodulation disclaimed
liability for McInnis’s injuries and alleged that McInnis’s surgeon and P&H
were “the sole proximate cause” of McInnis’s nerve condition.  McInnis
designated the attorneys who signed the pleading as legal experts.  This
pleading is not evidence that McInnis would have succeeded in her medical
malpractice lawsuit “but for” the non-suit of P&H.  See LaGoye v.
Victoria Wood Condo. Ass’n, 112 S.W.3d 777, 787 (Tex. App.—Houston [14th
Dist.] 2003, no pet.) (“[P]leadings and . . . unauthenticated . . . documents
cannot form the basis of the scintilla of evidence needed to meet [a party’s]
burden to counter [a] no-evidence summary judgment motion.”).

McInnis argues in the alternative that she was not
obligated to proffer expert testimony regarding causation because the Law Firm
stated at a hearing that it was not requesting deposition testimony or an expert
report from her legal expert on causation.

The Law Firm filed its amended no-evidence summary
judgment motion on May 20, 2009.  McInnis filed her response on June 10, 2009;
she also filed a motion to compel and requested additional time to conduct
discovery.  On June 12, 2009, the trial court held a hearing on McInnis’s
motion to compel and request for additional time to conduct discovery.  

The following exchange took place at the June 12
hearing:

MCINNIS:  I really needed [my medical expert’s] deposition
in order to do [my legal expert’s] deposition or an expert report fairly . . .
.

THE COURT:  When could you present [your legal expert] for
deposition?

LAW FIRM:  Excuse me, Judge.  I don’t mean to interrupt but
—

THE COURT:  You haven’t asked for [her legal expert’s]
deposition?

LAW FIRM:  No.  I don’t want his deposition.

THE COURT:  Okay.

LAW FIRM:  I’ve explained that, and I’ve withdrawn any
request for that.

MCINNIS:  He’s asking for an expert report.  I need [my
medical expert’s] opinion.

LAW FIRM:  I don’t want that.

THE COURT:  You don’t want an expert report?

LAW FIRM:  I apologize.  I am
not — that is not impeding — if we have a continuance, we might go that route. 
But right now I’m not — I don’t need that and I haven’t required that and I
haven’t come to the Court asking for that.

This exchange does not
relieve McInnis of the burden to show causation via expert testimony in
response to a summary judgment motion.  To avoid summary judgment, McInnis was
required to submit competent causation evidence to the trial court regardless
of whether the Law Firm requested discovery or an expert report.  See Duerr,
262 S.W.3d at 76–77; McInnis, 261 S.W.3d at 201.  Before the hearing
took place, McInnis already had responded to the summary judgment motion with
almost two hundred pages of exhibits; none of the exhibits contained evidence
of causation on the professional negligence claim.  

Because McInnis proffered no expert testimony to
establish that she would have prevailed in her underlying suit but for the
asserted negligence, she provided no evidence to establish a causal link
between the asserted negligence and her asserted injury.  Accordingly, the
trial court properly granted the Law Firm’s no-evidence summary judgment motion
on professional negligence.  See Duerr, 262 S.W.3d at 76–77; McInnis,
261 S.W.3d at 201.  We overrule McInnis’s Issue I(A) as it relates to her
professional negligence claim.[4]     


B.        Additional Claims

The Law Firm contends in its summary judgment motion
that the demise of McInnis’s professional negligence claim is dispositive
because McInnis’s remaining claims for fraud and breach of fiduciary duty are
not freestanding causes of action distinct from her claim for professional
negligence.  In making this argument, the Law Firm relies on the precept that
precludes fracturing a single claim for professional negligence into multiple
causes of action.  See Duerr, 262 S.W.3d at 70 (citing Goffney v.
Rabson, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied)).  The Law Firm also asserts that there is no evidence to support
McInnis’s breach of fiduciary duty claim because there is no evidence of
self-dealing by the Law Firm. McInnis contends that the fraud and breach of
fiduciary duty claims are viable stand-alone claims.  

Determining whether allegations against a lawyer —
labeled as breach of fiduciary duty, fraud, or some other cause of action — are
actually claims for professional negligence is a question of law to be
determined by the court.  Duerr, 262 S.W.3d at 70 (citing Murphy v.
Gruber, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied), and
Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.—Houston [14th
Dist.] 1998, pet. denied)).  The prohibition against fracturing a professional
negligence claim does not necessarily foreclose the simultaneous pursuit of a
negligence-based malpractice claim and a separate breach of fiduciary duty or
fraud claim when there is a viable basis for doing so.  Id.  But “the
plaintiff must do more than merely reassert the same claim . . . under an
alternative label.”  Id.

It is difficult to decipher and classify the numerous
allegations and assertions in McInnis’s pro se petition; based on our reading
of the pleadings, she makes the following claims:

The Law Firm negligently

a.      non-suited
P&H; and

b.      failed
to properly handle her case.

The Law Firm fraudulently

a.      non-suited
P&H;

b.      prevented
McInnis from participating in pre-trial settlement negotiations and from being
present or prepared during trial;

c.      concealed
the risk of non-suiting P&H;

d.      concealed
its prior relationship with Dr. Charnov;

e.      concealed
Dr. Charnov’s relationship with P&H; and

f.       concealed
the substance of the phone conversation between Dr. Charnov and the Law Firm
that allegedly resulted in the Law Firm’s (1) decision to non-suit P&H, and
(2) failure to represent McInnis to the best of the Law Firm’s ability.

McInnis summarizes her fraud
allegations by stating: “Because of how the case, trial, and [McInnis] was
handled by [the Law Firm] in the underlying case, the jury returned a verdict
against [the surgeon] not in [McInnis’s] favor and there was no verdict against
P&H . . . .”

McInnis also asserts that the Law Firm breached
its fiduciary duty to her when it

a.      non-suited
P&H;

b.      failed
to disclose the risk of non-suiting P&H;

c.      failed
to represent McInnis “fairly, honestly, and in good faith” and to keep her
“informed;”

d.      failed
to disclose its prior relationship with Dr. Charnov;

e.      failed
to fully disclose the substance of the phone conversation between Dr. Charnov
and the Law Firm that allegedly resulted in the Law Firm’s decision to non-suit
P&H;

f.       failed
to disclose an alleged conflict of interest between Dr. Charnov and McInnis;

g.      placed
its loyalty to Dr. Charnov above its loyalty to McInnis; and

h.      engaged
in self-dealing.

We must analyze whether these
contentions support a separate claim for fraud or breach of fiduciary duty.[5]

1.         Fraud

The gist of a fraud claim is deception as to an
existing fact.  Sullivan v. Bickel & Brewer, 943 S.W.2d 477, 481
(Tex. App.—Dallas 1995, writ denied).  Common law fraud consists of a material
representation that was (1) false; (2) either known to be false when made or
was asserted without knowledge of its truth; (3) intended to be acted upon; (4)
was acted upon; and (5) caused injury.  Kahlig v. Boyd, 980 S.W.2d 685,
688 (Tex. App.—San Antonio 1998, pet. denied).  When a duty of disclosure exists,
deliberate suppression of material facts also constitutes fraud.  Id. at
688–89.  

McInnis’s fraud claims (a)–(b) above are merely
relabeled claims for professional negligence because they assail the adequacy
of the Law Firm’s litigation performance in connection with the underlying
medical malpractice lawsuit.  See Beck v. Law Offices of Edwin J. (Ted)
Terry, Jr., P.C., 284 S.W.3d 416, 428 (Tex. App.—Austin 2009, no pet.)
(“[A]s long as the crux of the complaint is that the plaintiff’s attorney did
not provide adequate legal representation, the claim is one for professional
negligence.”); Duerr, 262 S.W.3d at 70.  McInnis’s fraud claim (c) above
is premised not on a concealed fact but on the claimed inadequacy of the Law
Firm’s representation — the asserted inappropriateness and harmful effect of
non-suiting P&H and failing to present evidence of negligence by other
treating physicians.  Accordingly, this contention does not assert a fraudulent
failure to disclose that is distinct from McInnis’s professional negligence
claim.  See Beck, 284 S.W.3d at 428.  

McInnis’s fraud claims (d)–(f) above rest on her
contention that the Law Firm did not represent McInnis to the best of its
ability after Dr. Charnov telephoned the Law Firm.  McInnis states in the fraud
section of her live pleading: “Dr. Charnov’s and [the Law Firm’s] relationship
affected [the Law Firm’s] representation of [McInnis] . . . and affected how
[the Law Firm] handled her case from that point of Dr. Charnov’s phone call on.
. . .  Dr. Charnov’s phone call had affected [the Law Firm’s] representation of
the case.”  

The circumstances asserted by McInnis parallel those
in Kahlig, 980 S.W.2d at 687–88.  In Kahlig, a former client sued
an attorney for negligence, fraud, and violations of the Texas Deceptive Trade
Practices Act (among other claims) based on allegations that the attorney had
an affair with the client’s second wife while representing the client in a child
custody dispute with his first wife.  Id. at 687–90.  The client argued
that the affair created a conflict of interest that the attorney was required
to disclose, which led to a diminished quality of representation in the
child-custody matter.  Id. at 689.  The court concluded that the affair
did not give rise to separate fraud or DTPA claims that were distinct from the
client’s professional negligence claim.  Id. at 689–90.  It held: “[The
client’s] argument, unveiled, is that once [the lawyer] entered into the affair
he was no longer representing [the client] to the best of his abilities.”  Id.
at 690.  “Thus, to the extent that [the client] argues that the affair and its
concealment affected the quality and care of [the lawyer’s] services, his claim,
despite its designation, is a [professional negligence] claim.”  Id.    

McInnis similarly argues that the Law Firm’s asserted
relationship with Dr. Charnov affected the quality and care of the services
provided to McInnis in the underlying suit.  She contends that assertedly
fraudulent conduct by the Law Firm arising from its dealings with Dr. Charnov
resulted in a verdict for her surgeon and no verdict against P&H.  These
are relabeled claims for professional negligence despite their designation as
fraud claims.  See id.  

We conclude as a matter of law that McInnis has not
asserted a separate fraud claim against the Law Firm.  We overrule McInnis’s
Issue I(B) as it relates to her fraud claim.[6]

2.         Breach of
Fiduciary Duty

A claim for professional negligence focuses on
whether an attorney represented a client with the requisite skill; a breach of
fiduciary duty claim encompasses whether an attorney obtained an improper
benefit from the representation.  Duerr, 262 S.W.3d at 71.  An attorney
can commit professional negligence by giving an erroneous legal opinion or
erroneous advice; failing to give any advice or opinion when legally obliged to
do so; disobeying a client’s lawful instruction; taking an action when not instructed
by the client to do so; delaying or failing to handle a matter entrusted to the
attorney’s care by the client; or not using an attorney’s ordinary care in
preparing, managing, and presenting litigation that affects the client’s
interests.  See Zidell v. Bird, 692 S.W.2d 550, 553 (Tex. App.—Austin
1985, no writ).  Breach of fiduciary duty, in contrast, often involves the
attorney’s failure to disclose conflicts of interest; failure to deliver funds
belonging to the client; improper use of client confidences; or self-dealing.  See
Goffney, 56 S.W.3d at 193.

McInnis’s breach of fiduciary duty claims (a)–(c)
above are merely relabeled claims for professional negligence because they too
assail the adequacy of the Law Firm’s litigation performance.  See Duerr,
262 S.W.3d at 70 (citing Kimleco Petroleum, Inc. v. Morrison & Shelton,
91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied).  “Regardless of
the theory that a plaintiff pleads, as long as the crux of the complaint is
that the plaintiff’s attorney did not provide adequate legal representation,
the claim is one for legal malpractice.”  Kimleco Petroleum, Inc., 91
S.W.3d at 924.  The crux of McInnis’s breach of fiduciary duty claims (a)–(c)
is that the Law Firm did not provide adequate legal representation in the
underlying lawsuit and failed to properly advise, inform, and communicate with
McInnis regarding the litigation.  This is an assertion that the Law Firm
committed professional negligence.  See Beck, 284 S.W.3d at 436.    

McInnis’s breach of fiduciary duty claims (d)–(h)
above rest on her contention that the Law Firm’s relationship with Dr. Charnov
motivated the Law Firm to non-suit P&H in the underlying litigation to her
detriment.  McInnis’s characterization of claims (d)–(h) as claims for breach
of fiduciary duty rests on her argument that a preexisting relationship between
the Law Firm and Dr. Charnov gave rise to a “conflict of interest.”  She states
in her brief: “[T]he gist of the complaint is that the lawyer obtained an
improper benefit by not disclosing the asserted ‘conflict’” and that
“therefore, it is an independent breach of fiduciary duty claim.” 

As discussed above, an attorney’s failure to disclose
conflicts of interest is one circumstance that may give rise to an independent
breach of fiduciary duty claim.  See id. at 436.  However, merely
characterizing particular circumstances as a “conflict of interest” does not
automatically transform a professional negligence claim into a breach of
fiduciary duty claim.  Id. (citing Murphy, 241 S.W.3d at 698). 
Regardless of how McInnis may attempt to label her claims, “[I]f the gist of
[her] complaint is that the lawyer failed to advise, inform, or communicate
with a client, it is a negligence claim.”  Id.  “If, on the other hand,
the gist of the complaint is that the lawyer obtained an improper benefit by
not disclosing the asserted ‘conflict,’ it is an independent
breach-of-fiduciary-duty claim.”  Id.

Independent breach of fiduciary duty claims also
include complaints that a lawyer failed to disclose “a direct pecuniary interest
in the litigation that was adverse to the client and pursued such an interest
to the client’s detriment.”  Id.; see also Archer v. Med. Protective
Co., 197 S.W.3d 422, 427–28 (Tex. App.—Amarillo 2006, pet. denied)
(allegation that insurance defense lawyer failed to represent insured client’s
interests in order to serve counsel’s “own interests in keeping the business
and favor” of the carrier “concerns a matter of divided loyalties, e.g., the
pursuit of his own pecuniary interests over the interests of his client . . .
[and] can be viewed as claims involving breached fiduciary duties”); Deutsch
v. Hoover, Bax & Slovacek, L.L.P., 97 S.W.3d 179, 187 & 190 (Tex.
App—Houston [14th Dist.] 2003, no pet.) (allegations that law firm failed to
advise client about conflicts presented when law firm was named as party in
related proceeding, failed to withdraw, and failed to recommend separate
counsel “are appropriately classified as a breach-of-fiduciary-duty claim,
independent of Deutsch’s negligence claim”); Spera v. Fleming, Hovenkamp
& Grayson, P.C., 25 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.]
2000, no pet.) (clients raised separate breach of fiduciary duty claim because
lawyers failed to disclose to clients that they had competing claim to certain
settlement funds that lawyers sought to have approved by trial court as
additional attorney’s fees).

Even if we assume that McInnis’s allegations (d)–(h)
describe a claim for breach of fiduciary duty separate from her professional
negligence claim, the trial court properly granted summary judgment on that
claim.  McInnis pleaded that the Law Firm engaged in self-dealing — essentially
claiming that the Law Firm breached its fiduciary duty to McInnis because it
obtained an improper benefit through its dealings with Dr. Charnov.  The Law
Firm moved for a no-evidence summary judgment on that point.[7] 
In response, McInnis presented no evidence of self-dealing or of any benefit to
the Law Firm.  The only evidence presented on this point was that Dr. Charnov’s
expertise, in the past, had been beneficial at least once to Law Firm.  McInnis
presented no evidence that there was any current relationship between the Law
Firm and Dr. Charnov, nor any evidence that the Law Firm received any benefit
from its non-suit of P&H.

McInnis failed to present any evidence to support a
claim of breach of fiduciary duty based on self-dealing.  We overrule McInnis’s
Issues I(A) and (B) as they relate to her breach of fiduciary duty claim.[8] 


II.        Discovery Motions

In addition to her response to the no-evidence
summary judgment motion, McInnis also filed motions to (1) extend the discovery
period; and (2) compel the Law Firm to answer certain discovery requests more
fully.[9] 
McInnis complains that the trial court erred in denying the motions.

A.        Additional Time to Conduct Discovery

Texas Rule of Civil Procedure 190.5 states that “the
trial court may modify a discovery control plan at any time and must do so when
the interest of justice requires.”  Tex. R. Civ. P. 190.5.  The rule then lists
two specific situations when the trial court must allow additional discovery,
neither of which applies in this case.  See id.  We must determine then
whether the trial court properly concluded that the interest of justice did not
require an extension in this case.  See id.; see also Brown v. Brown,
145 S.W.3d 745, 750 (Tex. App.—Dallas 2004, pet. denied).  We review the trial
court’s conclusion on this issue under an abuse of discretion standard.  See
Brown, 145 S.W.3d at 750 (trial court “did not abuse its discretion” in
concluding that “the interest of justice” did not require modification of the
discovery period).  Trial courts have broad discretion in matters of
discovery.  Johnson v. Davis, 178 S.W.3d 230, 242 (Tex. App.—Houston
[14th Dist.] 2005, pet. denied).    

McInnis filed this case in May 2005.  The trial court
granted the first summary judgment in January 2006.  The summary judgment was
reversed and the case was remanded on June 17, 2008 to provide McInnis with an
adequate opportunity to conduct discovery.  See McInnis, 261 S.W.3d at
197, 205.  The trial court signed a new docket control order on November 5,
2008, under which the discovery period was set to end on April 24, 2009. 
McInnis requested and the trial court granted an extension of the discovery
period until May 25, 2009.  The Law Firm filed an amended no-evidence motion
for summary judgment on May 20, 2009.  

McInnis requested an additional extension of
unspecified duration based on the following grounds: 

(1)       
Her medical condition restricted her ability to review the 60 box case
file from the underlying medical malpractice and a 20 box case file from
another helpful case; 

(2)       
McInnis’s husband, who is the “major income producer in the family,” had
major surgery in January 2009;

(3)       
McInnis had to assist her mother, who fell and broke her right wrist in
March 2009;

(4)       
McInnis’s medical expert, whom she would “prefer” to depose before she
deposes her legal expert, had been out of the country since March 2009; his
unavailability prevented McInnis from taking his deposition or requesting an
expert report before the discovery deadline; and

(5)       
The Law Firm was not forthcoming about the deposition availability of
its expert and the individual lawyers who handled McInnis’s case when McInnis
attempted to schedule depositions.

McInnis complains on appeal
that she “has only had 14 [months]” to conduct discovery and review the
contents of the trial boxes while the case was before the trial court,
notwithstanding the time lost due to family reasons.  

The record reveals that McInnis did not take full
advantage of this time permitted for discovery.  McInnis stated at the hearing
that she did not request deposition availability from the Law Firm or its
expert until less than a month before the discovery deadline.  The discovery deadlines
did not affect McInnis’s ability to prepare her own experts for trial or to
request reports from them to defeat summary judgment.           

At the June 23, 2009 hearing, the trial court stated:

THE COURT: As I recall,
you-all were set for trial [after the case was remanded]; and then you came in
and asked for a continuance.  I granted a continuance not only on the trial
setting but on a motion for summary judgment the defendants had filed. . . . 
You are now currently set in August sometime, right? . . .  I’m not inclined to
grant an extension of time for discovery.  I think that there’s been ample time
to take care of discovery.  So I’m going to deny that motion.

The trial court acted within
its discretion in denying McInnis’s request to extend the discovery deadlines
because, by her own computation, McInnis had 14 months to conduct discovery and
already had obtained one extension after the case was remanded.  See Brown,
145 S.W.3d at 750.  We overrule McInnis’s Issue II(A). 

B.        Motion to Compel

McInnis argues on appeal that the trial court erred
in denying her motion to compel the Law Firm to answer previously served
interrogatories “completely and with specificity.”[10]

We review the trial court’s denial of McInnis’s
motion to compel for abuse of discretion.  See Johnson, 178 S.W.3d at
242.  As we stated earlier, trial courts have broad discretion in handling
discovery matters.  Id.

None of the interrogatories listed in the proposed
order filed by McInnis address whether she would have prevailed on the
underlying medical malpractice case if the Law Firm had not committed the
alleged legal malpractice.  Because we concluded that the trial court properly
granted summary judgment based on the absence of causation evidence, we also
conclude that the trial court did not abuse its discretion in denying the
motion to compel discovery relating to other issues.  Id.[11]


We overrule McInnis’s Issues II(B) and (C).

CONCLUSION

Having overruled all of McInnis’s issues on appeal,
we affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Boyce, and Christopher.

 

 









[1]
McInnis frequently refers to her negligence-based claim against the Law Firm as
a “legal malpractice” claim.  We recognize a “potential nomenclature problem”
because any claim brought against a lawyer by the lawyer’s client may be
referred to broadly as a “legal malpractice” claim.  See Deutsch v. Hoover,
Bax & Slovacek, L.L.P., 97 S.W.3d 179, 185 n.1 (Tex. App—Houston [14th
Dist.] 2003, no pet.).  To avoid confusion, we refer to McInnis’s
negligence-based legal malpractice claim as a claim for professional
negligence.





[2]
The motion to compel pertains to interrogatories McInnis sent to the Law Firm. 
In her motion, McInnis complains that the Law Firm’s answers are incomplete and
evasive and asks the trial court to compel the Law Firm to answer the
interrogatories completely and with specificity.  The trial court stated at a
June 12, 2009 hearing on McInnis’s motion to compel: “Okay, I don’t have an
order.  So, you need to send me an order on the motion to compel so that I can
make my rulings to reflect that. . . .  I need a specific one that goes item by
item on each of the items that you object to.”  McInnis filed a more detailed
proposed order on June 29, 2009, but the trial court did not rule on the
motion.  On this record, the trial court implicitly denied the motion to compel
by granting the no evidence motion for summary judgment on August 10, 2009.  See
Carter v. MacFadyen, 93 S.W.3d 307, 310 n.2 (Tex. App.—Houston [14th Dist.]
2002, pet. denied).  We overrule McInnis’s Issue II(D).





[3]
We granted McInnis’s motions to file a first, second, and third amended brief;
we thus consider those issues raised in her final brief.





[4]
McInnis complains in Issue I(E) that the Law Firm “misrepresented” to the trial
court at the hearing on McInnis’s motion for new trial that McInnis failed to
proffer expert testimony to defeat summary judgment.  McInnis claims that she
had, in fact, submitted such evidence to the trial court.  McInnis points to an
affidavit and deposition testimony from two medical experts from the underlying
medical malpractice case.  The record confirms that the Law Firm’s statement at
the hearing was made accurately in reference to McInnis’s failure to present
testimony from a legal expert.   





[5]
McInnis also asserted in the trial court that the Law Firm (1) failed to
safeguard her confidences; and (2) failed to pursue McInnis’s claim against Dr.
Gohel, a treating physician allegedly responsible for her post-operative care. 
She does not reference these contentions on appeal, and we do not consider them
in determining whether the trial court properly granted summary judgment in
favor of the Law Firm.  See Tex. R. App. P. 38.1(i).





[6]
Our disposition of this issue renders Issues I(A), (C), (D), and (F) moot to
the extent that those issues relate to McInnis’s professional negligence and
fraud claims.  Issues I(A), (C), and (F) relate to summary judgment on her
fraud claim if we were to determine that it was not subsumed in her claim for
professional negligence.  McInnis complains in Issue I(D) that the Law Firm’s
alleged discovery abuse prevented her from being able to present evidence to
defeat the no-evidence motion for summary judgment; none of the asserted
discovery misconduct addresses McInnis’s ability to provide evidence on
causation for professional negligence. 





[7]
McInnis complains in Issues I(C) and (F) that the Law Firm’s summary judgment
motion did not sufficiently challenge her ability to present evidence on an
element of her claim.  However, the Law Firm adequately stated in its motion:
“The Fourteenth Court of Appeals has held that a breach of fiduciary duty claim
. . . requires allegations of self-dealing, deception, or misrepresentation
rather than the failure to provide adequate legal representation. . . .  There
is no evidence of self-dealing, deception, or misrepresentation by [the Law
Firm].”  We overrule Issues I(C) and (F) as they relate to McInnis’s breach of
fiduciary duty claim.  





[8]
McInnis argues in Issue (D) that she did not have adequate time to discover
evidence in support of her breach of fiduciary duty claim; she complains that
the Law Firm filed its summary judgment motion before she finished scheduling
her deposition of the individuals at the Law Firm who handled her medical
malpractice case.  However, the Law Firm’s motion did not prevent McInnis from
taking depositions during the discovery period.  We overrule Issue (D) as it
relates to McInnis’s breach of fiduciary duty claim.       





[9]
Although McInnis titled one of her additional motions in part as one for a
“continuance,” we interpret the request as one for additional time to conduct
discovery.  The record does not reveal that the trial court held a hearing on
the Law Firm’s no-evidence summary judgment motion, and the trial court did not
grant the summary judgment motion until almost two months after the hearing on
McInnis’s motions.  Because the trial court did not hear the Law Firm’s
no-evidence summary judgment motion at the June 12, 2009 hearing on McInnis’s
discovery motions, there was nothing to continue.  McInnis also refers briefly on
appeal to a request “for sanctions in the form of a continuance;” we construe
this as an additional reference to her argument that a continuance was
warranted.  





[10]
McInnis also complains that the trial court erred in failing to rule on her
motion for new trial.  However, that motion was overruled by operation of law. 
See Tex. R. Civ. P. 329b(c).





[11]
McInnis also argued that the Law Firm’s incomplete and evasive answers to her
previously served discovery requests warranted an extension of the discovery
deadlines.  Because we conclude that the trial court acted within its
discretion in overruling McInnis’s motion to compel more specific responses, we
do not address this argument.