# Supreme Court of Texas

No. 23-0427

Pitts, et al.,
*Petitioners,*

v.

Rivas, et al.,
*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued September 11, 2024**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE HUDDLE filed a concurring opinion, in which Justice Lehrmann, Justice Bland, and Justice Young joined.

In professional malpractice cases, Texas's courts of appeals have developed a principle known as the "anti-fracturing rule." The rule limits the ability of plaintiffs to recharacterize a professional negligence claim as some other claim—such as fraud or breach of fiduciary duty—in order to obtain a litigation benefit like a longer statute of limitations. In today's accounting malpractice case, we agree with the

court of appeals that the anti-fracturing rule must be applied to the plaintiffs' claims. We disagree, however, with how the court of appeals applied the anti-fracturing rule, and we hold that the rule bars the plaintiffs' fraud claim. We further hold that the plaintiffs' breach of fiduciary duty claim fails because, as a matter of law, no fiduciary duty existed under the undisputed facts. The judgment of the court of appeals is reversed, and judgment is rendered for the defendants on all claims.

## I.

Rudolph Rivas is a home builder and real estate developer. Brandon and Linda Pitts, husband and wife, are accountants who operate the firm of Pitts & Pitts.[1] Beginning in 2007, the Accountants provided various accounting services for Rivas, including preparation of quarterly financial statement compilations and tax returns. The compilations were prepared as consolidated statements for multiple Rivas entities. To prepare them, Brandon Pitts accessed Rivas's data using QuickBooks. The relationship continued for ten years. During this time, Brandon and Linda Pitts developed a personal friendship with Rivas and his wife.

For several years, the Accountants provided services without a written agreement. In 2015 and 2016, the parties executed engagement letters, which stated that Pitts & Pitts would "perform a compilation engagement with respect to the consolidated financial statements of" Rivas's company. The letters, signed by Rivas and Brandon Pitts, further stated:

---

[1] We refer to Petitioners Brandon Pitts, Linda Pitts, and the firm of Pitts & Pitts collectively as the Accountants.

2

> The objective of our engagement is to apply accounting and financial reporting expertise to assist you in the presentation of financial statements without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financial statements in order for them to be in accordance with accounting principles generally accepted in the United States of America.

The letters contain several other provisions limiting the responsibility and liability of the Accountants. For example: "Our engagement cannot be relied upon to identify or disclose any financial statement misstatements, including those caused by fraud or error"; and "we will issue a report that will state that we did not audit or review the financial statements and that, accordingly, we do not express an opinion, a conclusion, nor provide any assurance on them." The Accountants also provided services not described in the engagement letters, both before and after the letters were executed, including preparing tax returns.

In 2016, the financial statements Rivas supplied to lenders contained errors. The statements were later corrected. Rivas testified that he complained to the Accountants about the accuracy of statements showing shareholder equity in excess of $10 million, thinking this figure was too high. He then retained a different accountant, Pamela Whipple, who audited the financial statements and found multiple errors that caused the inflated figure for shareholder equity. One alleged reason for the inflated figure was that the Accountants erroneously duplicated entries for certain assets.

By January 2018, the Accountants had ceased providing services to Rivas. In August 2020, Rivas sued the Accountants. He claimed the

Accountants were responsible for the errors in the financial statements. These errors, he alleged, required a restatement that lowered the figure for shareholder equity, which in turn caused lenders to demand additional deposits and refuse to provide further credit to Rivas. The errors also caused Rivas to overpay taxes, and although these overpayments were eventually refunded, they drained Rivas's accounts. This loss of cash reserves, combined with the loss of access to credit, allegedly forced Rivas's business into bankruptcy. The petition brought claims for "negligence/gross negligence/professional malpractice," "intentional misrepresentations/fraud," breach of fiduciary duty, and breach of contract.[2]

The Accountants moved for summary judgment, arguing: (1) the plaintiffs judicially admitted in a related bankruptcy proceeding that the defendants' alleged conduct was not the proximate cause of their injuries; (2) the negligence claims, which accrued in 2016 at the latest, were barred by the two-year statute of limitations; (3) the breach of fiduciary duty, breach of contract, and fraud claims were barred by the anti-fracturing rule because they should be classified as professional negligence claims; (4) any alleged breach of contract that occurred before August 14, 2016, was barred by the four-year statute of

---

[2] The negligence and breach of fiduciary duty claims were brought against all defendants. The breach of contract claim was brought against Pitts & Pitts. The fraud claim was brought against Brandon Pitts and Pitts & Pitts. The petition also alleged that Pitts & Pitts is vicariously liable for the individual torts of Brandon and Linda. Because, as we hold below, none of the underlying tort claims against the individuals is viable, the vicarious liability theory necessarily fails. *See Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019).

4

limitations; and (5) no evidence supported Rivas's claims. The district court granted summary judgment for the Accountants on all claims without specifying the grounds.

Rivas appealed. The court of appeals affirmed as to the negligence and breach of contract claims. 684 S.W.3d 849, 859, 868 (Tex. App.—Dallas 2023). The court reversed, however, as to the fraud and breach of fiduciary duty claims. *Id.* at 866–68. It held that the anti-fracturing rule did not bar these two claims and that the evidence supporting them was sufficient to survive summary judgment. *Id.* at 862–67.

The Accountants petitioned for review, and we granted the petition. Rivas did not seek our review of the lower courts' rejection of his negligence, gross negligence, and breach of contract claims. The case before this Court is therefore confined to whether summary judgment was proper on Rivas's fraud and breach of fiduciary duty claims against the Accountants.[3]

## II.

## A.

The Accountants argue that the fraud and breach of fiduciary duty claims are barred by the anti-fracturing rule. The anti-fracturing

---

[3] Rivas also sued two other accountants, Reed Pitts (son of Brandon and Linda) and Jan Turner, for negligence and breach of fiduciary duty. As to all defendants, Rivas conceded in the court of appeals that the statute of limitations for professional malpractice bars the negligence claims. 684 S.W.3d at 858. The court of appeals affirmed summary judgment against Rivas on the breach of fiduciary duty claims against Reed Pitts and Jan Turner, *id.* at 865–66, 868, and Rivas does not appeal this result. Thus, all claims against Reed Pitts and Jan Turner have failed, and none of those claims is before this Court.

rule has been developed extensively in Texas courts of appeals in professional negligence cases in recent decades.[4]  No court of appeals has disclaimed it.  Under the rule, plaintiffs in professional negligence cases may not convert "what are really negligence claims" into other

[4] *E.g.*, *Forshee v. Moulton*, 694 S.W.3d 803, 808–11 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *Brickley v. Reed*, No. 03-22-00453-CV, 2023 WL 2376127, at *2–4 (Tex. App.—Austin Mar. 7, 2023); *Tex. Pharmomedical Exps., Inc. v. Wang*, No. 14-19-00888-CV, 2021 WL 2325085, at *5–6 (Tex. App.—Houston [14th Dist.] June 8, 2021, pet. denied); *Webb v. Ellis*, No. 05-19-00673-CV, 2020 WL 1983358, at *10 (Tex. App.—Dallas Apr. 27, 2020, pet. dism'd by agr.); *Cotton v. Jones*, No. 11-15-00142-CV, 2017 WL 3572818, at *2–4 (Tex. App.—Eastland Aug. 17, 2017, no pet.); *Parker v. Glasgow*, No. 02-15-00378-CV, 2017 WL 2686474, at *8 (Tex. App.—Fort Worth June 22, 2017, no pet.); *J.A. Green Dev. Corp. v. Grant Thornton, LLP*, No. 05-15-00029-CV, 2016 WL 3547964, at *6–8 (Tex. App.—Dallas June 28, 2016, pet. denied); *Vara v. Williams*, No. 03-10-00861-CV, 2013 WL 1315035, at *3–4 (Tex. App.—Austin Mar. 28, 2013, pet. denied); *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.); *Isaacs v. Schleier*, 356 S.W.3d 548, 556–60 (Tex. App.—Texarkana 2011, pet. denied); *Won Pak v. Harris*, 313 S.W.3d 454, 457–59 (Tex. App.—Dallas 2010, pet. denied); *Beck v. Law Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426–28 (Tex. App.—Austin 2009, no pet.); *Duerr v. Brown*, 262 S.W.3d 63, 70–75 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Murphy v. Gruber*, 241 S.W.3d 689, 693–99 (Tex. App.—Dallas 2007, pet. denied); *Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 289 n.1 (Tex. App.—Dallas 2005, no pet.); *Aiken v. Hancock*, 115 S.W.3d 26, 28–29 (Tex. App.—San Antonio 2003, pet. denied); *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189–91 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied); *Goffney v. Rabson*, 56 S.W.3d 186, 190–94 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Kahlig v. Boyd*, 980 S.W.2d 685, 689 (Tex. App.—San Antonio 1998, pet. denied); *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.—El Paso 1988, no writ).

claims such as fraud, breach of contract, or breach of fiduciary duty in order to gain a litigation advantage. *Murphy*, 241 S.W.3d at 693.

The logic underlying the anti-fracturing rule is straightforward. It may often be possible to artfully recast a professional negligence allegation as something more—such as fraud or breach of fiduciary duty—to avoid a litigation hurdle such as the statute of limitations. Courts, however, must look not merely to the labels chosen by the plaintiff but instead to the gravamen of the facts alleged to determine how to treat the claim. *Forshee*, 694 S.W.3d at 809; *Vara*, 2013 WL 1315035, at *4; *Won Pak*, 313 S.W.3d at 457; *Murphy*, 241 S.W.3d at 697. Under the anti-fracturing rule, if the crux or gravamen of the plaintiff's claim is a complaint about the quality of professional services provided by the defendant, then the claim will be treated as one for professional negligence even if the petition also attempts to repackage the allegations under the banner of additional claims. *J.A. Green Dev. Corp.*, 2016 WL 3547964, at *8; *Won Pak*, 313 S.W.3d at 457. In other words, if the "gist of a client's complaint" or "the real issue" is that the professional failed to exercise the degree of care, skill, or diligence that professionals of ordinary skill and knowledge would exercise, the anti-fracturing rule requires the claim to be litigated as one for professional negligence, and the plaintiff may not re-label the allegations under a different claim to obtain a litigation advantage. *Riverwalk CY Hotel Partners*, 391 S.W.3d at 236; *Kimleco Petroleum*, 91 S.W.3d at 924.

The anti-fracturing rule has developed primarily in legal malpractice cases. For example, one court has stated that the rule

"prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or violations of the DTPA." *Won Pak*, 313 S.W.3d at 457. To avoid application of the rule, "the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. The plaintiff must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Duerr*, 262 S.W.3d at 70. If, however, the gravamen of the claim extends beyond professional negligence and the plaintiff raises a genuine fact issue on the additional elements of such a claim, then the claim will survive summary judgment. *See id.* We agree with these descriptions of the anti-fracturing rule, which has been applied to accountant malpractice as well, including suits asserting claims for fraud and breach of fiduciary duty. *Wang*, 2021 WL 2325085, at *5–6; *J.A. Green Dev. Corp.*, 2016 WL 3547964, at *6–8.

We have noted the anti-fracturing rule's existence, but we have not expressly applied it. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (describing a court of appeals' dismissal of a breach of fiduciary duty claim under the rule). We apply the rule today. The law has long provided a remedy for clients who can prove their allegations of professional negligence, but it does so within a well-developed body of common law and statutory law applicable to such claims. The anti-fracturing rule appropriately seeks to ensure that professional malpractice *allegations* are litigated under the law applicable to professional malpractice *claims*. As one of the first anti-fracturing cases reasoned:

> Nothing is to be gained by fracturing a cause of action arising out of bad legal advice or improper representation into claims for negligence, breach of contract, fraud or some other name. If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages. Nothing is to be gained in fracturing that cause of action into three or four different claims and sets of special issues.

*Sledge*, 759 S.W.2d at 2. As another court of appeals explained, "The rule also serves to prevent legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages." *Beck*, 284 S.W.3d at 427 (cleaned up).

The anti-fracturing rule comports with this Court's recognition, in other contexts, that the law should not reward artful pleading. *See, e.g., Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010).[5] Where

---

[5] "It is well settled that such artful pleading and recasting of claims is not permitted." *Yamada*, 335 S.W.3d at 196. In *Yamada*, we held that "if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Id.* at 197. *See also Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 433 (Tex. 2017) ("Our holding today . . . prevents litigants from avoiding a forum-selection clause with 'artful pleading.'"); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) ("This analysis is consistent with our holdings that focus the legal treatment of claims on the true nature of disputes rather than allow artful pleading to morph contract claims into fraud causes of action to gain favorable redress under the law."); *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("We reaffirm that a claimant cannot escape the Legislature's statutory scheme by artful

possible, courts should look to the gravamen or underlying nature of the claim and apply the law accordingly. "The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017).[6]

Importantly, the anti-fracturing rule does not categorically bar a client from pursuing multiple causes of action against a professional, including claims for fraud or breach of fiduciary duty. Instead, the rule prohibits plaintiffs from attaching these labels, and others like them, to their allegations when the gravamen of the allegations is that the defendant failed to exercise the requisite degree of care or skill in the provision of professional services. If additional facts supporting additional claims are supported by the allegations and evidence, then the gravamen of the claim may extend beyond a claim for professional negligence, and the plaintiff may rightly maintain such a claim. In other words, if the gravamen of the claim "goes beyond what traditionally has been characterized as [professional] malpractice," then additional claims beyond professional negligence may be viable. *Duerr*, 262 S.W.3d at 70.

---

pleading."); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004) ("Plaintiffs cannot use artful pleading to avoid the MLIIA's requirements when the essence of the suit is a health care liability claim.").

[6] *See also CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016) (when determining whether a claim is a health care liability claim, "we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded").

As we said in *Latham v. Castillo*, there is a "difference between negligent conduct and deceptive conduct," and in a case involving genuine allegations of fraud, "[t]o recast th[e] claim as one for legal malpractice is to ignore this distinction." 972 S.W.2d 66, 69 (Tex. 1998). The anti-fracturing rule does not ask courts to blur the distinction between negligent conduct and deceptive conduct. Instead, it requires courts to examine whether the plaintiff has blurred such distinctions by framing its professional negligence allegations as something more in order to gain a litigation advantage. Thus, if a plaintiff raises a genuine fact issue on the elements of additional claims that truly extend beyond the scope of what has traditionally been considered a professional negligence claim, then the additional claims may survive summary judgment under the anti-fracturing rule. In this way, application of the anti-fracturing rule may often resemble application of the familiar summary-judgment standards. The rule nevertheless serves an important purpose by requiring a searching analysis of the gravamen of the plaintiff's claims and thereby guarding against efforts to artfully evade the procedural and substantive rules applicable to allegations of professional malpractice.

## B.

The court of appeals suggested that Rivas's fraud claim was not barred by the anti-fracturing rule in part because the alleged deficiencies in the Accountants' work were outside the scope of the parties' engagement letters, which contemplated only the preparation of consolidated financial statements. 684 S.W.3d at 864. This was error. All of the Accountants' alleged work for Rivas—and all of the

Accountants' alleged errors—fell well within the scope of services that an outside accountant might commonly perform for a small-business client. The Accountants in this case, and accountants generally, may often provide many services that extend beyond the scope of a company's financial statements. The anti-fracturing rule is not limited to the subject matter of the client's engagement letter and does not require detailed analysis of whether the allegedly deficient professional services were, in a technical sense, accounting services (or legal services or other services, as the case may be). The rule extends to any allegations that traditionally sound in professional negligence, as do the allegations here.

The court of appeals further reasoned that Rivas successfully alleged fraudulent misrepresentations by the Accountants sufficient to distinguish his claims from traditional malpractice claims under the anti-fracturing rule. We disagree. The relevant allegations are as follows. Rivas alleged that Brandon Pitts misrepresented that he and his staff were proficient with the QuickBooks computer program. The Accountants allegedly misused QuickBooks, resulting in duplicated assets and overstatement of shareholder equity in the financial statements. These errors caused an overpayment of taxes and a large overstatement of the entities' net worth. Despite the discovery of these mistakes in financial statements in September 2016, Brandon Pitts gave the statements to Jenny White, who then forwarded them to lenders. Brandon later suggested concealing the errors by "amortizing" them "as an expense to income" over a period of 10 to 15 years, but Rivas rejected this proposal. When the errors were revealed to Rivas, he was advised

12

by legal counsel that he needed to circulate corrected financials to his lenders, and he did so. The lenders then demanded that Rivas make additional deposits and declined to provide further credit. The loss of credit and overpayment of taxes led to the collapse of Rivas's business.

A fraud claim premised on the above facts is barred by the anti-fracturing rule because the gravamen of the claim is that the Accountants failed to provide competent accounting services, which damaged Rivas's business. The crux of the claim—indeed the entirety of the claim and supporting evidence—is that the Accountants made accounting errors that, when revealed to lenders, led to a loss of credit, which in turn was fatal to the business. This is a straightforward professional malpractice allegation.

The separate fraud claim boils down to the allegation that the Accountants misrepresented their proficiency with QuickBooks and the allegation that the Accountants did not disclose their errors to Rivas or to the banks as soon as they should have. Overstating one's professional competence is a classic example of malpractice.[7] Likewise, the Accountants' alleged failure to timely disclose their errors does not extend "beyond what traditionally has been characterized as [professional] malpractice." *Duerr*, 262 S.W.3d at 70. The gravamen of the fraud claim is that the Accountants knew they were incompetent but proceeded anyway, which led to mistakes they later knew about.

---

[7] *See, e.g.*, *Aiken*, 115 S.W.3d at 28–29 (allegation that attorney "falsely represented he was prepared to go forward and try [the plaintiff's] case" does not state a claim beyond professional negligence); *Beck*, 284 S.W.3d at 431 (a lawyer's "'fail[ure] to disclose' his incompetence" concerns the ordinary duty of care and cannot support a non-negligence claim).

Then, rather than immediately confess their mistakes, they hoped nothing would come of it. Finally, after the mistakes were revealed, they suggested ways to hide them. These are serious allegations of professional misconduct. But there is no evidence that the Accountants were engaged in a fraudulent scheme against Rivas or that they otherwise intended to harm him. Nor is there any evidence that the Accountants' alleged deception is what harmed Rivas. To the contrary, the harm to Rivas stemmed from the accounting errors themselves, not from any alleged misrepresentations associated with them.

At bottom, the heart of the plaintiffs' allegations is that the Accountants' woeful incompetence harmed Rivas's business. These are allegations for which Rivas could have recovered, had he timely brought them and proved them. But they are allegations of accounting malpractice and must therefore be treated as such by the courts. Under the anti-fracturing rule, these allegations cannot be reframed as a fraud claim to avoid the two-year statute of limitations applicable to malpractice claims.

### C.

The court of appeals also held that the anti-fracturing rule did not bar Rivas's breach of fiduciary duty claim. This claim fails regardless of the anti-fracturing rule.

Rivas's breach of fiduciary duty claim largely tracks his other claims. He alleges that the Accountants breached their fiduciary duties when they created erroneous financial statement compilations that severely damaged Rivas's business. At the summary judgment hearing, Rivas's counsel stated that the damages for the negligence claim and the breach of fiduciary duty claim were the same.

14

The courts of appeals have often rejected breach of fiduciary duty claims under the anti-fracturing rule, and we agree that in many cases the rule may bar such claims when they amount to re-packaged malpractice claims.[8] Here, however, we need not apply an anti-fracturing analysis to the breach of fiduciary duty claims because, on the undisputed facts, no fiduciary duty existed as a matter of law. When the question is whether a plaintiff has sufficiently alleged additional claims beyond a professional malpractice claim, the answer under both the anti-fracturing rule and under conventional summary-judgment standards may often turn on whether the allegations and evidence support the additional elements of the additional claim. In this case, we need not ask whether the breach of fiduciary duty claim runs afoul of the anti-fracturing rule, because there was no fiduciary duty to breach.

Unlike the attorney–client relationship, Texas courts have not held that an accountant–client relationship automatically gives rise to fiduciary duties under Texas law. *See Slack v. Preuss*, No. 06-21-00018-CV, 2022 WL 247824, at *7 (Tex. App.—Texarkana Jan. 27, 2022, pet. denied); *In re Est. of Abernethy*, 390 S.W.3d 431, 438–39 (Tex. App.—El Paso 2012, no pet.). Rivas does not argue

---

[8] *See, e.g.*, *Beck*, 284 S.W.3d at 431–39 (holding the anti-fracturing rule barred claims that attorney breached fiduciary duty by failing to disclose substance abuse and conflict of interest); *Duerr*, 262 S.W.3d at 71–75 (holding the anti-fracturing rule barred claims that attorneys breached fiduciary duties in settling lawsuit); *Kimleco Petroleum*, 91 S.W.3d at 923–24 (holding the anti-fracturing rule barred claims that attorney breached fiduciary duty in failing to designate qualified expert and misleading clients about another lawsuit).

otherwise, so we have no occasion to comment on that question. Rivas argues instead that an informal fiduciary relationship arose due to his close personal and business relationship with his accountants. We disagree.

We have held in the past that an informal fiduciary relationship can arise from personal relationships of special trust and confidence. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997). Neither party has questioned that precedent, and we need not reconsider it here in order to reject Rivas's argument that fiduciary duties arose under these facts.[9]

Because a fiduciary relationship entails exceptionally high duties, this Court has repeatedly held that the law will not lightly impose fiduciary duties on the parties in a business relationship. *E.g.*, *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Schlumberger*, 959 S.W.2d at 177. Under our precedent, in order for there to be any possibility that parties to a business relationship owe each other informal fiduciary duties arising from a special relationship of trust and confidence, the special relationship must have existed "prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331; *Schlumberger*, 959 S.W.2d at 177.

---

[9] The concurring Justices take a dim view of this Court's precedent on "informal" fiduciary duties. *Post* at 2 (Huddle, J., concurring). If a party questioned that precedent or if the outcome of the case turned on the precedent's continuing vitality, we might have occasion to decide whether we share the concurring Justices' view. Because we have not considered whether to overturn or revise our precedent, nothing in this opinion should be taken as reaffirming or agreeing with it. We simply decide the case under the existing precedent, which the parties agree governs their case.

Further, a party's subjective belief that his business associate is a fiduciary is always insufficient to create such a relationship. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Gregan v. Kelly*, 355 S.W.3d 223, 229 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Kelly's subjective trust and feelings alone do not justify transforming the parties' arm's-length dealings into a relationship of trust and confidence."). Were the law otherwise, an unusually trusting person could unilaterally impose fiduciary duties on business associates who do not expect to be subjected to such heightened duties. As we have noted:

> The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594–95 (Tex. 1992) (citations, footnotes omitted), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). In the same vein, evidence that business associates were "friends and frequent dining partners" is legally insufficient to establish a fiduciary relationship. *Meyer*, 167 S.W.3d at 331.

Rivas mustered no evidence supporting the existence of an informal fiduciary relationship between himself and Brandon Pitts or any other defendant. The claimed fiduciary relationship allegedly arose from the following facts. Rivas met Brandon and Linda Pitts in 2006 or 2007. Their sons were friends and at one time were roommates. Rivas

retained the Accountants in 2007. The accounting and consulting services became more extensive over time, and Rivas relied heavily on the Accountants to provide accurate and proper accounting. Rivas had "a high degree of trust and confidence" in Brandon Pitts and therefore relied on decisions the Accountants made. Rivas and his wife had dinners with Brandon and Linda Pitts on an unspecified number of occasions. Rivas built a house for Brandon at a discount. Brandon spent many hours explaining the accounting process to Rivas without charge.

This evidence comes nowhere close to creating a fiduciary relationship under our precedents. There is no evidence that a special relationship of trust and confidence preceded the parties' business agreement. Rivas's subjective trust in the Accountants is no evidence of a fiduciary relationship. Providing discounted commercial services—like home-building—to a business associate does not impose fiduciary duties on the recipient. And the evidence offered to show a special personal relationship between Rivas and the Accountants amounts only to business conversations, a few dinners, and a close friendship between their sons. None of these allegations, even taken together and viewed in the light most favorable to Rivas, could support the imposition of informal fiduciary duties on Pitts or any other defendant under this Court's precedent.

It also bears noting that nothing in the parties' engagement letters suggests that either party contemplated that the law would treat them as having a special relationship of trust and confidence. On the contrary, the letters state: "Our engagement cannot be relied upon to identify or disclose any financial statement misstatements, including

18

those caused by fraud or error, or to identify or disclose any wrongdoing within the entity or noncompliance with law and regulations." The letters place on Rivas the "overall responsibilities" in "[t]he selection of accounting principles generally accepted in the United States"; "[t]he preparation and fair presentation of financial statements in accordance with accounting principles generally accepted in the United States"; "[t]he design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements"; and "[t]he prevention and detection of fraud."

These written contracts provide a strong, objective indication that these parties, however friendly and cordial their relationship may have been, contemplated that the law would treat them as having an arm's-length business relationship—not a fiduciary relationship giving rise to special legal duties. To impose a fiduciary duty on a party who enters into a business transaction using an engagement letter that disclaims such duties and goes to great pains to hold the counter-party at arm's length would be to give judges and juries—rather than the parties themselves—the authority to define the parameters of the parties' legal relationship. The freedom of contract includes the freedom to define the nature and scope of a business relationship in a way that forecloses the imposition by courts of duties inconsistent with the parties' agreement. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129–33 (Tex. 2004); *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 909–14 (Tex. 2007); *Schlumberger*, 959 S.W.2d at 181–82. The parties did so here, and Rivas's evidence about their

19

personal relationship cannot displace the choices reflected in the parties' written agreement.

Because there was no fiduciary relationship as a matter of law, summary judgment on the breach of fiduciary duty claim was proper.

### III.

For the foregoing reasons, the district court correctly granted summary judgment for the defendants on all claims. The judgment of the court of appeals is affirmed in part and reversed in part, and judgment is rendered for the defendants on all claims.

James D. Blacklock
Chief Justice

**OPINION DELIVERED:** February 21, 2025